# Exhibit A

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| | | *5/11/2022* |
| | | COUNTY Suffolk Superior Court (Boston) |

| Plaintiff | HUB FOUNDATION CO., INC. | Defendant | THE CHUBB CORPORATION |
|---|---|---|---|
| ADDRESS: | 139 Billerica Road | ADDRESS: | 15 Mountain View Road |
| Chelmsford, MA 01824 | | Warren, NJ 07059 | |
| | | | |
| Plaintiff Attorney: | Michael J. Mozes | Defendant: | |
| ADDRESS: | 41 South High Street, Suite 2600 | ADDRESS: | |
| Columbus, OH 43215 | | | |
| BBO: | | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A06 | Breach of Insurance Contract | F | ☒ YES    ☐ NO |

*If "Other" please describe: _____

Is there a claim under G.L. c. 93A?    ☐ YES   ☒ NO

Is there a class action under Mass. R. Civ. P. 23?    ☐ YES   ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date

1. Total hospital expenses _____
2. Total doctor expenses _____
3. Total chiropractic expenses _____
4. Total physical therapy expenses _____
5. Total other expenses (describe below) _____

_____

Subtotal (1-5): _____ **$0.00**

B. Documented lost wages and compensation to date _____

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages _____

F. Other documented items of damages (describe below) _____

_____

TOTAL (A-F): _____ **$0.00**

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

_____

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Breach of contract Plaintiff's demand to defend and indemnify covered entities pursuant to previous demands (ongoing damages in excess of $75,000) | $75,000.00 |
| 2. | | |
| | Total | **$75,000.00** |

| Signature of Attorney/Unrepresented Plaintiff: X   /s/ Michael J. Mozes | Date: | May 11, 2022 |
|---|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

_____

Date Filed 5/11/2022 1:30 PM
Superior Court - Suffolk
Docket Number

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney/Unrepresented Plaintiff: X   /s/ Michael J. Mozes | Date: | May 11, 2022 |
|---|---|---|

www.mass.gov/courts

Date/Time Printed:05-11-2022 12:27:09

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### AC Actions Involving the State/Municipality *

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party †

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E(X) | |

### AA Administrative Civil Actions

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S(X) | |

### TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES  ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY MAY RESULT IN DISMISSAL OF THIS ACTION.

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

| | | |
|---|---|---|
| HUB FOUNDATION CO., INC.,<br>139 Billerica Road,<br>Chelmsford, MA 01824 | )<br>)<br>) | CASE NO. _____ |
| | )<br>) | JUDGE _____ |
| Plaintiff, | )<br>) | **COMPLAINT** |
| vs. | )<br>) | **(JURY TRIAL DEMANDED)** |
| THE CHUBB CORPORATION,<br>15 Mountain View Road<br>Warren, NJ 07059 | )<br>)<br>)<br>) | **5/11/2022** |
| Defendant. | ) | |

NOW COMES Plaintiff Hub Foundation Co., Inc. ("Hub"), by and through his undersigned counsel, and respectfully alleges as follows:

## THE PARTIES

1.      Plaintiff Hub is a corporation formed and existing under the laws of the Commonwealth of Massachusetts with a principal place of business located at 139 Billerica Road, Chelmsford, MA 01824.

2.      Defendant The Chubb Corporation ("Chubb") is a corporation formed and existing under the laws of the State of New Jersey with a principal place of business located at 15 Mountain View Road, Warren, NJ 07059.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.

4.      Hub is a citizen of the Commonwealth of Massachusetts and Chubb is a citizen of the State of New Jersey. Chubb is not a citizen of the Commonwealth of Massachusetts. Accordingly, there is complete diversity between Hub and Chubb in this Action.

5.      Further, the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Chubb as it has had continuous and systematic business with the Commonwealth of Massachusetts, entered into contracts affecting business conducted in the Commonwealth of Massachusetts, and entered into contracts giving rise to a cause of action within the Commonwealth of Massachusetts.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred within this District.

## FACTUAL BACKGROUND

8.      Hub is a construction company with a decades-long reputation for safety, quality, expertise, and professionalism in the deep foundation and drilling industries.

9.      Hub is a member of a joint venture between Hub, Hayward Baker, Inc. ("HBI"), and Case Foundation, Inc. ("Case") founded specifically for work that the three companies intended to perform on a construction project located in Somerville and Medford, Massachusetts.

10.     Pursuant to this joint venture and the resulting Joint Venture Agreement (the "JVA"), Hub performed work on the MBTA's extension of the Green Line through Somerville and Medford, Massachusetts (the "MBTA Project"). A true and accurate copy of the JVA is attached to this Complaint as **Exhibit A**.

11.     During work on the MBTA Project, one of Hub's employees was allegedly injured while assisting in the use of an auger and Kelley Bar extension.

12.     Following this alleged injury, that employee filed suit against a number of entities affiliated with Hub and HBI, including GLX Constructors ("GLX"), a joint-venture consortium that served as the general contractor on the MBTA Project.

13.     In connection with its work on the MBTA Project, Hub obtained a commercial general liability insurance policy (the "CGL Policy") from Chubb. A true and accurate copy of the CGL Policy is attached to this Complaint as **<u>Exhibit B</u>**.

14.     Following the filing of Hub employee's lawsuit, HBI and GLX demanded defense and indemnification from Chubb pursuant to the JVA.

15.     The JVA contains a clear condition under which Hub's duty to indemnify and defend HBI and GLX are triggered. This can be found in Section 1.2 of the JVA, which states in relevant part that "[e]ach Party shall indemnify the other for that Party's losses caused by their own sole fault, recklessness and/or willfully negligent act."

16.     The assertions in the above-referenced lawsuit from Hub's employee identify Hub as a party alleged to be liable.  That lawsuit alleges that the plaintiff was a Hub employee, using Hub equipment, and at the time of the alleged injury was in the course of performing work under Hub's supervision and discretion on the MBTA Project. Hub disputes these allegations and has not been named as a party to that lawsuit as of the date of this Complaint.

17.     Hub agrees with the position that it is required to indemnify HBI and GLX Constructors under these circumstances. Additionally, Hub agrees with the position that the fact that there has not yet been a finding of liability does not preclude a request for indemnification.

18.     The JVA does not contain language requiring that liability must be established prior to indemnification. Rather, since Hub's indemnification obligation includes the duty to defend a third party, reading a final judgment requirement into the JVA where there is none would defeat the essential purpose of the indemnification language in Section 1.2.

19.     Additionally, the JVA makes Hub jointly and severally liable for HBI's obligations to GLX. Even if the requests for indemnification from HBI, GLX, and Hub were premature, and

they are not, Hub is responsible for indemnifying and defending GLX as well as for its proportionate share of the associated defense costs.

20.    Specifically, Section 1.2 of the JVA provides that "[t]he obligations and liabilities of the Parties under the Project Contract shall be joint and several."

21.    Likewise, Section 9.1(a) of the JVA provides that "in the event of any liabilities or deficiencies arising out of or resulting from the submission of the Joint Proposal or the performance of the Project Contract or this Agreement … each Party hereto shall assume and pay its Proportionate Share of such liabilities or deficiencies."

22.    In other words, any obligations of HBI under its contract with GLX are also Hub's obligations.

23.    Additionally, the "joint and several" provisions of the JVA do not require that Hub be deemed legally liable for its employee's injuries in order for those provisions to apply.

24.    As detailed above, Hub's obligations under the JVA are twofold, requiring it to defend and indemnify HBI and GLX under (a) the indemnification provision of Section 1.2, and (b) the provisions in Sections 1.2 and 9.1 making Hub jointly and severally liable for the obligations of HBI.  This includes the defense and indemnification of GLX.

25.    The combination of these two contractual requirements means that the JVA constitutes an "insured contract" under the CGL Policy such that Hub 's assumed obligations of HBI and GLX are insured costs and liabilities for which it is entitled to coverage under that policy. This coverage exists regardless of whether Keller, HBI, and/or GLX are named insureds or additional insureds on that policy.

26.    Following the issuance of the initial demand for defense and indemnification, Chubb responded with a November 18, 2021 letter denying that request.

27.     HBI and GLX sent a supplemental demand for defense and indemnification to Chubb following the receipt of the November 18, 2021 letter. A true and accurate copy of that letter is attached to this Complaint as **Exhibit C**.

28.     Hub also sent a letter dated February 17, 2022, joining in HBI and GLX's demand for defense and indemnification to Chubb. A true and accurate copy of that letter is attached to this Complaint as **Exhibit D**.

29.     Hub received a letter on March 1, 2022 from counsel for Chubb improperly denying Hub's demand for defense and indemnification. A true and accurate copy of that letter is attached to this Complaint as **Exhibit E**.

30.     Following the receipt of the March 1, 2022 letter from Chubb's counsel, Hub determined that the parties were at an impasse and was left with no choice but to file the instant Complaint.

## **COUNT I**

## **(Breach of Contract)**

31.     Hub incorporates the foregoing paragraphs by reference as if fully set forth herein.

32.     The CGL Policy constitutes an agreement between Hub and Chubb.

33.     The CGL Policy was supported by consideration.

34.     Hub was ready, willing and able to perform its part of the CGL Policy by continuing to satisfy its premium payment requirements under that policy.

35.     Chubb committed a breach of the CGL Policy by refusing Hub's demand for defense and indemnification of HBI and GLX Constructors despite those demands constituting covered costs and liabilities pursuant to the CGL Policy.

36.     Hub suffered harm as a result of Chubb's breach of the CGL Policy and will continue to suffer substantial direct and consequential damages in an amount to be established at trial.

## COUNT II

## (Declaratory Judgment)

37.     Hub incorporates the foregoing paragraphs by reference as if fully set forth herein.

38.     The facts alleged in this Complaint show that there is a substantial controversy between Hub and Chubb, two parties who have adverse legal interests.

39.     Specifically, the CGL Policy requires Chubb to defend and indemnify HBI and GLX in connection in connection with the suit described in this Complaint as well as any other suits arising against Hub, HBI, and/or GLX constructions in connection with the MBTA Project.

40.     This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

41.     Hub seeks a declaratory judgment that the CGL Policy requires Chubb to defend and indemnify HBI and GLX Constructors in connection with the suit described in this Complaint as well as any other suits arising against Hub, HBI, and/or GLX constructions in connection with the MBTA Project.

## REQUESTS FOR RELIEF

**WHEREFORE**, Hub respectfully requests that this Court:

A.     Enter judgment against Chubb and in favor of Hub on Count I in the amount of Hub's damages, which are significantly in excess of $75,000;

B.     Enter judgment against Chubb and in favor of Hub on Count II and declare that the CGL Policy requires Chubb to defend and indemnify HBI and GLX Constructors in connection

with the suit described in this Complaint as well as any other suits arising against Hub, HBI, and/or GLX constructions in connection with the MBTA Project;

     C.     Award Hub all such other and further relief as this Court may deem just and appropriate, including interest, costs, expenses, and attorneys' fees.

### <u>HUB DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>

Respectfully submitted,

*/s/ Michael J. Mozes*
MICHAEL J. MOZES (MA Bar No. 682396)
RICHARD D. KALSON (PHV forthcoming)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
41 South High Street, Suite 2600
Columbus, OH 43215
Telephone:  614.223.9300
Facsimile:   614.223.9330
Email:   rkalson@beneschlaw.com

DAVID M. HOPKINS (PHV forthcoming)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:   216.363.4588
E-Mail:  dhopkins@beneschlaw.com

*Attorneys for Plaintiff Hub Foundation Co., Inc.*

# Exhibit A

Hayward Baker Inc.

AND

HUB Foundation

AND

Case Foundation

# JOINT VENTURE AGREEMENT

For

The Green Line Extension - MBTA

Boston, Massachusetts

HB/HUB/Case Green Line Extension

## <u>JOINT VENTURE AGREEMENT</u>

THIS Joint Venture AGREEMENT made and entered into as of the _____ day of _____, 2018 by and between the following corporations:

BETWEEN:

                    Hayward Baker, Inc.
                    7550 Teague Road, Suite 300
                    Hanover, MD 21076 (hereinafter "Hayward Baker" or "HBI")

AND:

                    HUB Foundation (hereinafter "HUB")
                    139 Billerica Road
                    Chelmsford, MA 01824

AND:

                    Case Foundation Inc.
                    1325 West Lake Street
                    Roselle, IL 60172

WHEREAS:

(a)       MBTA (the "Owner") is constructing a project known as the "Green Line Extension" in Boston (the "Project"); and

(b)       The Owner accepted proposals from prime contractors for the construction of the Project; and

(c)       GLX Constructors ("GLC") submitted such an offer to the Owner; and

(d)       HBI and Case (collectively "Keller") and HUB (the "Parties") agreed under an MOU dated July30, 2018 (the "MOU") to together prepare and submit a proposal to GLC for constructing portions of the Project including retaining walls, bridges, and related work (the "Work") due to the Work's large size, resource requirements and anticipated schedule among other factors, and, if awarded the work by GLC, construct the Work; and

(e)       The Parties submitted such a proposal to GLC (the "July 23, 2018 and subsequent pricing dated, November 7, 2017, Proposal"); and

(f)       On or about November 27, 2018 GLC notified the Parties that GLC intended to award the "Work" to the Parties; and

(g)       The Parties hereto desire to enter into this Joint Venture Agreement (the "Agreement") in order to fix and define between them their respective responsibilities, interests, and liabilities in connection with negotiating the contract with GLC and constructing the "Work", in harmony with the MOU;

NOW THEREFORE, IN CONSIDERATION of the mutual premises and agreements herein set forth, the Parties hereto covenant and agree as follows:

HB/HUB/Case Green Line Extension

1.0    PURPOSE OF JOINT VENTURE

1.1    The Parties hereby agree to enter into a contract with GLXC for performing and completing the agreed upon scope of work for the Project (the "Project Contract") by the Parties acting together pursuant to the terms and conditions of this Agreement.

1.2    HBI shall be the party under whose name the Project Contract is executed. The obligations and liabilities of the Parties under the Project Contract shall be joint and several. Such Project Contract shall be carried out and performed by them and all money, equipment, materials, supplies and other property wherein an equity is acquired by the Parties acting together shall be held jointly each as to its respective Proportionate Share per paragraph 2.1. Each Party shall indemnify the other for that Party's losses caused by their own sole fault, recklessness and/or willfully negligent act.

1.2.1    Keller agrees to consult with HUB regarding the terms and conditions of the Project Contract prior to entering into any such subcontract.

2.0    PERCENTAGES OF PARTICIPATION

2.1    Except as otherwise provided in paragraphs 9.2, 12, 13, 14, and 19.8 thereof, the respective interests of the Parties in any joint receipts and their respective shares in joint costs and liabilities that may result from the filing of such joint proposal or in the performance of the Project Contract or this Agreement and their interests in all property where an equity is acquired by the parties acting together (which participation of each party is herein called such party's "Proportionate Share") are as follows:

| JOINT VENTURER | PERCENTAGE |
|---|---|
| Hayward Baker Inc. | 25%* |
| HUB | 50% |
| Case | 25% |

*Or such other percentages as may be mutually agreed upon in writing by both parties.

It is the intent of both parties to provide resources to the Work in proportion to its Proportionate Share.

3.0    MANAGING PARTY AND MANAGEMENT COMMITTEE

3.1    Hayward Baker shall be the Managing Party of the Joint Venture.  The Project Manager shall be an employee of the Managing Party, and approved by the Management Committee. Should the person so selected as Project Manager be unable to continue in his position, his replacement shall also be selected by the Managing Party and approved by the Management Committee.

3.2    Each Party agrees to assign to carry out work in respect of the Project Contract with such key personnel from its staff as approved by the Managing Committee to be required for the efficient and expeditious performance of the work under the Project Contract.  All salaried staff assigned by either Party shall remain in the employment and on the payroll of such Party while engaged in the performance of work under the Project Contract.  All assigned personnel shall work under the direction and supervision of the project manager.  The amount of the base

salaries, fringe benefits, and special project allowances (excluding any bonuses) associated with the employment of all personnel while assigned to work on the Project Contract shall be as determined and approved by the Management Committee and shall thereafter be part of the Joint Costs.  For the purpose of this Agreement, "fringe benefits and special project allowances" shall mean, where applicable, worker's compensation and other statutory or required insurances, pension plan, 401-k contributions, holiday and vacation pay, medical, dental, group life and disability insurance payments, out-of-town allowances, overtime compensation, vehicle allowances and subsistence and other benefits and allowances that are required by the law. Notwithstanding the foregoing, no bonuses of any type shall be included as Joint Costs. Reimbursement will be in accordance with the rates set out in Schedule I – "Monthly Charges for Salaried Staff" attached hereto.  With respect to the hourly trade labor required for the proper performance of work under the Project Contract, the Managing Party shall, based on the scope of work, determine the method and entity that shall provide the payroll services.   The costs of all trade labor employed for the performance of work under the Project Contract shall be part of the Joint Costs.

3.3    Drew Floyd, James Maxwell, and Charles Huynh shall form the Management Committee which shall review and have the power of approval in respect of the joint tender, financial arrangement, acquisition and disposal of equipment, insurance requirements, project scheduling, contract, matters specifically provided for herein and other matters of general policy relating to the business of the bid and carrying out of the Project Contract.  Either member of the Management Committee may appoint an alternate to act on his behalf.  The Management Committee shall meet at least once a month and a meeting may be called at any time by any member or his alternate.  In lieu of holding actual meetings, decisions of the Management Committee may be made by resolutions in writing circulated to and signed by all members or their alternates.  Members or their alternates shall serve without remuneration and not as Joint Cost.

3.4    In order to be effective and binding, all decisions of the Management Committee must be unanimous.  In the event that the Management Committee shall be unable to achieve a unanimous decision on any matter, than the decision on such matter shall be reviewed by Scott Nichols and James Maxwell the Parties' senior management.  If agreement and the decision on such matter is not resolved within twenty (20) days, either Party may require such matter be determined by arbitration in accordance with paragraph 18 hereof, provided that the parties shall continue to perform their obligations hereunder as directed by the Managing Party pending the review of such matter by the Parties' senior management or determination of such matter by dispute resolution and the performance of the Project Contract and this Agreement shall not be delayed or hindered by reason thereof.

3.5    Subject to the general policies adopted by the Management Committee as described in paragraphs 3.3 and 3.4, the Project Contract shall be carried out and performed on behalf of the Parties under the direction of the Managing Party, acting through its officers, the project manager, other appropriate salaried employees or agents as it may hereafter at any time or from time to time designate, and the parties hereby authorize the performance of the Project Contract under the direction of the Managing Party in accordance with the decisions of the Management Committee.  Without limiting the foregoing, but subject always to the decisions of the Management Committee, the Managing Party shall have and is hereby delegated such powers and authorities as may be necessary and appropriate to enable it to properly and reasonably perform the work assigned in connection with the performance of the work under the Project Contract.

3.6     For the furnishing of the Managing Party's services, the Managing Party shall receive a fee of  2.5 % of the contract value.

## 4.0     MEETINGS AND REPORTS

4.1     Unless the Management Committee agrees otherwise, the Managing Party shall convene monthly meetings of the senior representatives of each party to review the progress of the work, such meetings shall be held at the principal office of the Joint Venture or at such other place as may be mutually agreed between the Parties.

4.2     The Managing Party shall submit to the other Parties written monthly and quarterly reviews and reports on the performance of the work under the Project Contract, the financial position related to the Project Contract and job methods and procedures.

## 5.0     FINANCING OF WORKING CAPITAL CONTRIBUTIONS

5.1     The Managing Party at any time or from time to time shall determine the appropriate amount of necessary working capital required to carry out and perform the Project Contract. Each Party shall contribute its Proportionate Share of such working capital in cash within ten days after the determination was made by the Management Committee.

5.2     In the event that either Party shall fail to so contribute, such party shall be in default and the provisions of paragraph 12 shall apply.

## 6.0     OFFICES

6.1     The principal office related to the administration of the Project Contract shall be at 9 Whipple Street, Unit 1, Cumberland, RI 02864.  If and as required, there shall also be a branch office at the site of the work under the Project Contract and other offices at such other place or places as the Management Committee may determine.

## 7.0     BANK ACCOUNTS

7.1     All Joint Receipts shall be deposited in the bank or banks selected by the Managing Party in a general account.  Withdrawal of such funds may be in such form and by such persons as the Management Committee may from time to time direct.  All payments and withdrawals shall be confirmed by both parties (email is sufficient), however, only one party needs to endorse checks or approve wire transfers once such confirmation is made.

## 8.0     ACCOUNTING METHODS

8.1     The Managing Party will provide weekly costs reports which will provide estimates of Project Contract revenue and expenses.  These reports are intended to provide the Management Committee timely information to properly manage the Project Contract.

8.2     A complete set of accounting records will be maintained for all transactions of the Project Contract, prepared in accordance with generally accepted accounting principles and shall be maintained at 9 Whipple Street, Unit 1, Cumberland, RI 02864.  Each Party shall have access to and the right to inspect such books and records at any reasonable time.

HB/HUB/Case Green Line Extension

8.3     The first fiscal year end for accounting purposes related to the project Contract and hereunder shall be December 31, 2018 and the subsequent fiscal year end will be on December 31, 2019.

8.4     Each Party shall be responsible for filing its own income tax returns as required by law which shall include its own proportionate share of revenue and expenses from the Project Contract.

## 9.0    LIABILITY OF PARTIES

9.1     (a)     Except as otherwise provided in paragraphs 9.2, 12, 13, 14, and 19.8     hereof, in the event of any liabilities or deficiencies arising out of or resulting from the submission of the Joint Proposal or the performance of the Project Contract or this Agreement, or the execution of any surety bonds or indemnity agreements in connection therewith, each Party hereto shall assume and pay its Proportionate Share of such liabilities or deficiencies.

        (b)     If, for any reason, a Party or Parties hereto sustains any liabilities or is required to pay any deficiencies as contemplated by paragraph 9.1(1) in excess of its Proportionate Share, the other Party shall reimburse such Party in such amount or amounts as the deficiencies paid and the liabilities assumed by such Party exceed its Proportionate Share of such liabilities or deficiencies. To that end, each Party shall be liable to and in addition, indemnify the other Parties against, and to hold each other Party harmless from any and all losses or deficiencies of the Joint Venture that are in excess of such other Party's Proportionate Share, provided however that the liability of the Parties shall not extend to or include any incidental, indirect or consequential losses that may be sustained or suffered by a Party hereto.

9.2     In the event of any liabilities or deficiencies arising out of or resulting from anything done or omitted to be done by one Party outside of the scope of or in material breach of the terms of this Agreement, (such Party herein called the "Party Responsible"), the Party Responsible shall assume and pay for all such liabilities or deficiencies resulting therefrom.  To that end, the Party Responsible shall be liable to, and in addition shall indemnify and hold harmless the other Party from and against any and all claims, demands, actions, and causes of action which shall or may arise by virtue of anything done or omitted to be done by the Party Responsible outside of the scope of or in material breach of the terms of this Agreement. Any set-off or back charge assessed against the Joint Venture by the Owner on account of a liability of a Party, which liability shall or may arise by virtue of anything done or omitted to be done by the Party Responsible outside of the scope of or in material breach of the terms of this Agreement, shall not be a Joint Cost and shall be paid by the Responsible Party out of its own funds.

9.3     In the event that any surety bonds shall be required by the contract, the Managing Party shall procure such bond or bonds in the name of the Joint Venture listing the parties carrying on business under the name set out in paragraph 1.2 and the Parties shall from time to time execute such bonds and indemnity agreements, including applications therefor, and other documents and papers and provide such indemnification covenant or other security as may be necessary in connection with submission of the joint tender for, and the performance of the Project Contract.

Each party is to execute such bonds and agreements equivalent to their percentage participation in the JV as defined in paragraph 2.1. Failure to provide such security will result in adjustment to their respective participation to the bond amount actually provided.

9.4    The premium cost for such bond or bonds obtained pursuant to paragraph 9.3 shall be a Joint Cost.

## 10.0    EQUIPMENT

10.1    The Management Committee shall determine the requirements of equipment to be used in the performance of the work under the Project Contract, and either Party may furnish the use of equipment to the Joint Venture as included and agreed in the proposal and as determined by the Management Committee for the performance of the work under the Project Contract, but the Parties jointly shall not thereby acquire an equity therein. In consideration of the use of such equipment, the furnishing Party shall receive as a Joint Cost the equipment cost recovery allowance in accordance with the rate and conditions set forth in Schedule II – "Cost Recovery Allowance for Equipment", to be attached hereto and incorporated by reference in the event the Project Contract is awarded. Each Party supplying equipment under the Project Contract shall purchase their own property insurance sufficient to cover their equipment. Such costs shall not be a Joint Venture cost.

10.2    In the event the equipment requirements cannot be met by either Party, the Management Committee, will direct the Joint Venture and/or a Party individually to purchase, rent or lease the equipment from others.

10.3    The Managing Party is authorized to cause the Parties to enter into short term rental of equipment with others and with the prior approval of the Management Committee, the Managing Party may cause the Joint Venture to enter into long term leases for equipment required. The Managing Party shall obtain property insurance for all equipment rented from third party sources. All cost for such rental equipment and insurance shall be a Joint Venture Cost.

10.4    Not-withstanding paragraph 10.1 above, the total amounts payable to any of the parties for rental of owned equipment shall not exceed that amount allowed in the bid estimate unless the contract income shall be increased by an amount equal to the time extension required to complete the additional work.

## 11.0    EXCLUSION OF INDIRECT CHARGES

11.1    Subject to the provisions of paragraphs 3.2, 10.1, and 11.2, none of the Parties shall be entitled to any payment or credit on account of its ordinary overhead or home office expenses, taxed on or measured by income, interest on funds advanced as working capital, or time spent out and expenses incurred in connection with the formation of the policy for and the general management of the work under the Project Contract.

## 12.0    DEFAULT OF WORKING CAPITAL CONTRIBUTIONS

12.1    If a Party shall fail to contribute its share of working capital as required under paragraph 5 above within ten days after the determination therefor was made by the Management Committee then such Party shall be in default (hereinafter called the "Defaulting Party").

12.2    Any such default shall constitute a material breach of this Agreement by the

Defaulting Party. Without in any way limiting the liability of the defaulting Party to the other Party by reason of any such breach, or the remedies of the other party in respect of such breach, it is understood that if the non-defaulting Party contributes excess working capital to the Joint Venture that the Defaulting Party should have contributed:

(a)     The working capital account of the non-defaulting Party or Parties shall be credited with interest on the amount of the excess working capital contributed by it at an annual rate being 2% in excess of the prime rate as published by The Wall Street Journal.  Such interest to be credit for the period commending on the date ten (10) days after the determination was made by the Management Committee and ending on the date on which the Defaulting Party makes good the default or the date of final settlement of the Project Contract and this Agreement or the date upon which repayment of the working capital by the Joint Venture to the Parties shall have been made in an aggregate amount equal to or exceeding the sum of their total contributions of working capital, whichever shall first occur.  The interest so credited shall be borne solely by the Defaulting Party and shall not be a Joint Cost.

(b)     Should the Defaulting Party not make good the default within ninety (90) days after the determination was made by the Management Committee, the non-defaulting Party may at its option demand the Parties' share in the payments of each of the Parties in surplus shall be in proportion to its then working capital contribution including contributions of excess working capital.  Should the non-defaulting Party exercise its right under this paragraph 12.2 (b), the interest payment set forth in paragraph 12.2(a) above shall cease as of the date that each of the Parties' share in profits is revised.  Should the Defaulting Party cure its default by reimbursing the non-defaulting party plus interest as specified in paragraph 12.2(a) within the said ninety (90) day period, then there shall be no adjustment to the entitlement to surplus in this paragraph.

(c)     Not-withstanding the provisions of paragraphs 12.2(a) and 12.2 (b) above, a Defaulting Party shall not be relieved of its obligations to pay any deficiencies or assume any liabilities suffered or incurred by the other Parties in carrying out the Project Contract to the full extent of its Proportionate Share as stated in paragraph 2.1 hereof and it shall also not be relieved of other obligations and liabilities imposed upon it by the Project contract and this Agreement.

13.0    BANKRUPTCY

13.1    In the event that any Party hereto shall dissolve, become bankrupt or insolvent, or commit any act of bankruptcy, or take advantage of any bankruptcy, reorganization, financial composition or arrangement statute, then from and after the date of such act or event, the right of such Party (herein called the "Suspended Party") to have its nominee participate on the Management Committee shall terminate and the Suspended Party or its legal representatives shall have no further voice in the performance of the Project Contract or in the management of the

affairs of the Parties.  All acts, consents or decisions with respect to the performance of the Project Contract or the management of the affairs of the Parties hereunder shall thereafter be taken solely by the other Party and the Suspended Party or its legal representatives shall have no share of the surplus.  Upon the final completion of the Project Contract and the collection of all Joint Receipts if there is a surplus, the Suspended Party's share of working capital contributed by it shall be distributed to it by prorate with the distribution to the other Party.

13.2  Not withstanding the provision of paragraph 12.1 above, the Suspended Party and its legal representatives shall not be relieved of its obligation to pay any deficiencies or assume any liabilities suffered or incurred to the extent of its Proportional Share as stated in paragraph 2 hereof and it shall also not be relieved of other obligations and liabilities imposed upon it by the Project Contract and this Agreement.

## 14.0    OTHER EVENTS OF DEFAULT

14.1   A Party shall be in default hereunder if such Party shall fail to perform any other material obligation imposed upon it under this Agreement, shall fail to perform any material obligation imposed upon it by any other agreement related to the work under the Project Contract or shall fail to comply with any laws applicable to the Project Contract or to agreements of this nature generally or in connection with the interest of the parties in the Project Contract or other property and assets held by the Parties generally, and shall fail to cure such default to perform any other obligation imposed upon it under this Agreement within  five (5) days after receiving written notice thereof from the other Party, or, if such default shall be curable, but is of a nature requiring more than five (5) days and less than thirty (30) days within which to cure, the Defaulting Party shall fail to commence to cure such default within a five (5) day period and thereafter to continue to correct such default with due diligence until the same has been corrected within thirty (30) days.  A default of working capital contribution under paragraph 12 or an event under paragraph 13 are not events of default under paragraph 14.1 hereof.

14.2    If any of the events of default provided in paragraph 14.1 hereof shall occur and shall not have been remedied with the period provided, the non-defaulting party shall have the following remedies available to it in addition to all of the remedies provided herein or by law against the defaulting Party:

> (a)      if the default consists of a failure to make any required payment other than contribution of working capital, the non-defaulting Party shall have the option, exercisable by delivery of notice in writing to the Defaulting Party with thirty (30) days after the date of such default (unless such default shall have been cured within the period of curing such default ) to make the payment which the Defaulting Party should have made and such amount shall bear interest as provided in paragraph 12.2(a), and the interest shall be borne solely by the Defaulting Party;

> (b)      in addition to the provisions of paragraph 4.2(a), the non-defaulting Party shall have the right to declare in writing that the Defaulting Party is a Suspended Party as defined in paragraph 13 and thereupon its rights and obligations shall be governed by paragraph 13.

## 15.0   DISTRIBUTION OF JOINT RECEIPTS

15.1  Joint Receipts shall first be used to discharge Joint Costs including payment for all accounts or claims in connection with the performance of work under the Project Contract and

any other contract, change order, amendment, supplemental agreement or subcontract entered into in furtherance thereof. Any surplus funds as the Management Committee may determine, shall be paid to the Parties promptly, in accordance with the entitlement of each party as set forth in this Agreement.

15.2   All working capital advanced by the Parties shall be repaid to the parties pro rata in accordance with their capital contribution, prior to the distribution of any surplus.

15.3   If at any time during the performance of the work under the Project contract, the Management Committee shall determine that the working capital of the Joint Venture is in excess of its current needs, the excess amounts of working capital or such portion thereof as the Management Committee may determine, may be paid to the Parties pro rata in accordance with their capital contribution at such time on such terms and conditions as the Management Committee may determine.

16.0   WINDING-UP AND DISSOLUTION

16.1   Upon the completion of the Project Contract, a true and correct accounting shall be made by the Managing Party of all costs and expenses and all accounts, vouchers and other data relating to the Project Contract and its performance.

16.2   To the extent that the records of the work under the Project Contract must be kept subsequent to the completion of the Project Contract, pursuant to the provisions of law or the requirements of the Project Contract, the same shall be kept at such places as the Managing Party may from time to time determine, and the cost of such shall be a Joint Cost.

16.3   Upon completion of the Project Contract, the Management Committee will make provision for or payment of:

    (a)      all Joint Costs;
    (b)      claim resolution strategy and direction for any and all claims;
    (c)      proper reserves for any non-insurance claims which have either been brought against the Parties or which it is reasonably anticipated will be brought against the Parties;
    (d)      reserves for contingencies, if any, and for warranties under the Project Contract that will be determined by the Management Committee in their discretion to be necessary; and
    (e)      all funds advanced by the Parties for working capital and all other amounts due to either Party in accordance herewith.
    (f)      review of all insurances procured in the name of the Joint Venture for, claims handling, premium finalization, reserve adjustments and negotiate policy(s) buyout.
    (g)      deductibles and captive draws for claims covered by insurance, including but not limited to deductibles under a Party's property insurance for Party-furnished equipment;

Except as otherwise provided in paragraphs 9.2, and 19.8 the deficiencies or surplus arising out of or resulting from the performance of the Project Contract or this Agreement, shall be divided between or paid or assumed by the Parties, as the case may be, in accordance with their respective Proportionate Share as herein before provided or as adjusted in accordance with paragraphs 12, 13, and 14 of this Agreement and this Agreement shall then terminate; provided however that,

notwithstanding such termination, the Parties shall remain obligated to contribute to the extent provided for by this Agreement, payment of any deficiencies or liabilities that may arise or accrue thereafter in respect of this Agreement or the performance of the Project Contract.

16.4  The Parties shall cause all equipment, materials, supplies and other property owned jointly by the Parties, if any, to be disposed of in accordance with the direction and decision of the Management Committee.

17.0   INSURANCE

17.1     The Parties shall carry adequate public liability, property damage and worker's Compensation insurance, as well as any other insurance that may be required or considered advisable from time to time in the option of the Management Committee so as to protect the Parties hereto adequately and hold them harmless form any accident or claim which may arise in the course of the performance of the Project Contract and for a period of one year following its completion.  The cost of such insurance and the deductible amount under the insurance policies or above the limits as determined by the Management Committee shall be borne by the Parties on the basis of Joint Costs.

17.2    In the event that Professional and/or Pollution Liability insurance is required based on the scope of work or the Project Contract, the Management Committee may require the appropriate Party to carry such insurance.

17.3    In the event that the Project Contract requires participation in an OCIP or CCIP, each Party will be responsible for the submittal of payroll and insurance information as required by the Project Contract.

17.4    The Parties shall maintain total Commercial General Liability insurance limits equal to or greater than $15,000,000.00.  These limits may be met with a combination of Commercial General Liability and umbrella/excess policies.

18.0   DISPUTE RESOLUTION

18.1     Any dispute which arises between the Parties as to the interpretation of this Agreement, the respective rights and obligations of the Parties hereunder or the proper course of action to undertake which the Parties are unable to resolve between themselves shall be finally settled by dispute resolution. Such dispute resolution shall be conducted in the State and County in which the Project is located, or such other location as may be mutually agreed upon by the Parties under the dispute resolution procedures set forth in this Article 18.0.

18.2     In the event of any dispute between the Parties, which cannot be resolved as provided under Article 3.4 herein, then, either Party hereto may file their written request with the other Party for dispute resolution. Within 5 work days of receipt of such written request, or within such time as is reasonable thereafter, the Parties shall convene a Disputes Resolution Board comprised of three arbitrators chosen from a list of available arbitrators with construction experience recommended by the nearest American Arbitration Association. The arbitrators shall be selected and the Dispute Resolution Board seated by the following method. Each Party shall choose one arbitrator from the list and the two arbitrators thus chosen shall select the third arbitrator who shall become the head of the Dispute Resolution Board.

18.3     The seated Dispute Resolution Board shall, within 5 working days of being seated, meet with the Parties to receive written arguments from each Party. Each Party will make a full and true copy of their written presentation to the other Party at the time such written presentation is delivered to the Board members. No pre-hearing discovery will be conducted on behalf of either Party except for documents required to be delivered or revealed between parties under the terms of this Joint Venture Agreement. Neither Party will make an oral presentation at the first meeting of the Dispute Resolution Board. Within 5 working days of receiving the written presentations of the Parties, the Dispute Resolution Board shall reconvene to hear oral presentations by both Parties. No Party shall be represented by legal counsel before the Board. No Party shall employ or be represented by an outside expert witness before the Board during oral arguments. Each Party shall have the opportunity to present their oral argument and to listen to the oral argument of the opposing Party, after which, each Party shall be allowed one rebuttal to the oral arguments presented by the other Party. The Dispute Resolution Board shall make their considerations from the written and oral information supplied by the Parties and render their decision with 5 working days after oral presentations have been delivered by the Parties.

18.4     The award rendered by the Dispute Resolution Board shall be final and conclusive and judgment thereon may be entered in any court having jurisdiction of its enforcement.  The determination as to responsibility for costs of the dispute resolution process and pre-award interest shall be included in the Dispute Resolution Board's award.

18.5     For any disputes between the Party's that amounts to One Million dollars or more ($1,000,000) the Parties agree to settle the dispute using binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.  Such arbitration shall be held in Philadelphia County, Pennsylvania.

19.0    MISCELLANEOUS

19.1    Neither Agreement nor any interest of any of the Parties herein (including any interest in monies payable to the Parties hereunder) may be assigned, mortgaged, pledged, transferred or hypothecated, by any of the Parties without the prior written consent of the other Party member.

19.2    This Agreement is entered into for the purpose of entering into a Project Contract and any approved additions thereto and modifications thereof and for no other purpose.  Nothing herein shall limit the Parties in their right to carry on their individual business for their own benefit.

19.3    Neither Party shall employ any of the money, property or credit of the other except as herein provided.  No Party shall draw, accept, endorse or negotiate any bill of exchange, promissory note or other instrument in the joint names of the Parties (except as provided in paragraph 9.3 and in the regular course of business of carrying out work under the Project Contract or hereunder) or permit any property jointly owned by the Parties or such Party's interest therein to be encumbered, attached, levied upon or impaired for its engagements or debts.

19.4    Nothing herein will be deemed to establish or constitute the Parties as partners and the Parties expressly disclaim any intention to create a partnership and nothing herein contained will constitute either of the Parties the agent of the other except as specifically otherwise herein provided.

19.5    All notice, demand or requests provided for or permitted to be given pursuant to this Agreement must be in writing and may be delivered personally, sent by telegram or fax or may be forwarded by first class, prepaid, registered mail to the addresses set forth below:

Hayward Baker, Inc.
9 Whipple Street, Unit 1
Cumberland RI 02864

HUB Foundation
139 Billerica Road
Chelmsford, MA 01824

Case Foundation
1325 West Lake Street
Roselle, IL 60172

Any notice delivered or sent by telegram shall be deemed to have been given and received at the time of delivery or if faxed upon receipt of transmission. Any notice mailed as aforesaid shall be deemed to have been given and received on the third business day after it is posted, provided that if there shall be between the time of mailing and the actual receipt of the notice a mail strike, slow-down or other labor dispute which might affect the delivery of such notice by the mails, then such notice shall only be effective if actually delivered. Either Party may change its address or fax number by written notice to the other Party and in such event the foregoing addresses or fax number shall be deemed to have been amended accordingly.

19.6   Each of the Parties hereby agrees to execute and deliver all such further and additional instruments and documents and to do such further acts and things as may be necessary to give full effects to this Agreement and to the performance of the Project Contract.

   (a)   Without restricting the generality of the foregoing, each Party shall from time to time execute such surety bonds and indemnity agreements, including applications therefore, and other documents and papers as may be necessary in connection with the submission of the Joint Proposal and the performance of the Project Contract.

   (b)   If the Project Contract is awarded to the Parties, each of the Parties will obtain all necessary registrations, licensed, etc., of any nature necessary to perform the work. Such Parties will maintain the necessary registrations, licenses, etc., until the completion, termination or abandonment of the Project Contract, and for a period of one year thereafter.

19.7   Each Party shall be solely responsible for and shall pay its own taxes, contracting licenses and corporation fees of any nature, and shall be liable to and in addition shall indemnify and hold harmless the other Parties therefrom. In addition, each Party shall be responsible for complying with the corporate registrations and other legal qualifications required by the Project Contract and any applicable laws. All job specific taxes, licensing and fees are to be charges to the Joint Venture.

19.8   This Agreement shall constitute the entire agreement of the Parties related to the matters of the Project Contract and shall not be changed, notified or discharged except by an instrument in writing of equal formality herewith executed and delivered by each of the Parties.

HB/HUB/Case Green Line Extension

19.9  This Agreement shall terminate if the Owner has announced the Project will not proceed on the basis on which tenders were invited; or, the Parties do not enter into a contract nor commence work under the Project Contract.

19.10  This Agreement is made pursuant to and shall be governed by and construed in accordance with the laws and jurisdiction of the State in which the Project is located.

19.11   This Agreement shall be binding upon and shall endure to the benefit of the Parties hereto and their respective successors and permitted assigns.

19.12   If any provisions of this Agreement or the application thereof to any circumstances shall be held to be invalid or enforceable, the remaining provisions of this Agreement, or the application thereof to other circumstances shall not be affected thereby and shall be held valid to the full extent permitted by law.

19.13   This Agreement shall be read with all changes of gender and number required by the context of circumstances.

19.14    The contributions made to the Project Contract by the Parties shall be invoiced to the Joint Venture on a monthly basis.  Invoices are to be presented by the end of the following month for which the charges are incurred.

19.15    It is agreed by all Parties that the rental rates included in the Estimate and the specific equipment technology used on the subject project are considered confidential and will not be disclosed to any other third party for a period of three (3) years from the date of this Agreement.

19.16    It is agreed by all Parties that neither Hayward Baker Inc. nor HUB nor Case can use photographs of, or anything which may be construed as referring to the Project for external use, including but not limited to sales presentations and talks, technical papers, written materials, and public relations unless such use clearly identifies the Project in the name of the Joint Venture. Any exceptions to this section 19.16 which would permit the use of the individual Parties names must be expressly agreed upon in writing by the Senior Management of both Parties.

19.17  It is agreed by all parties that HUB shall not recruit any person directly involved in the Project who is an employee of Keller nor shall Keller recruit any person directly involved in the Project who is an employee of HUB; from the time of this agreement and until one year after the completion of all the Work or termination of this Agreement and/or the Project Contract. Notwithstanding, "solicitation" shall not be defined or construed to include publications of a general nature not specifically directed at any employee or employees of the Parties.

19.18    For the purposes of this Agreement, the following words or expressions have the following meanings:

Deficiencies mean the amount, if any, by which the Joint Costs exceed the Joint Receipts;

Joint Costs means all costs incurred by the Parties in carrying out the work under the Project Contract including without limitation those paid to either Party as contemplated herein and those specifically identified as such pursuant hereto and as indicated in Exhibit B;

Joint Receipts means all funds contributed as working capital or received as refunds or progress, bonus or final payments under the Project Contract, money received on disposition of assets acquired by the Parties or jointly pursuant hereto or from insurance claims or otherwise received as a function of carrying out the Project Contract or the activities contemplated herein;

Party means either Keller or HUB as the context requires;

Parties means Keller and HUB in combination as the context requires;

Surplus means the amount, if any, by which the Joint Receipts exceed the Joint Costs.

IN WITNESS WHEREOF the Parties hereto have caused this Agreement to be executed by their duly authorized officers effective the day and year first above written.

Corporate seal of **Hayward Baker, Inc.** was hereunto affixed in the presence of:

C/S:

_____
Scott Nichols, Senior Vice President

_____
Witness

Corporate seal of **HUB** was hereunto affixed in the presence of:

C/S:

_____

_____
Witness

Corporate seal of **Case Foundation** was hereunto affixed in the presence of:

C/S:

_____

_____
Witness

# Exhibit B

## *POLICYHOLDER NOTICE*

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers"). Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478. Additional information may be available from your producer.

Thank you for choosing Chubb.

# IMPORTANT NOTICE TO POLICYHOLDERS

# TERRORISM RISK INSURANCE ACT

This Important Notice is being provided with your policy to further satisfy the disclosure requirements of the Terrorism Risk Insurance Act.

At the time you received the written offer for this policy, we provided you with an Important Notice to Policyholders indicating that the insurance provided in your policy for losses caused by certain acts of terrorism (as defined in the Terrorism Risk Insurance Act) would be partially reimbursed by the United States of America, pursuant to the formula set forth in the Terrorism Risk Insurance Act. In addition, as required by the Terrorism Risk Insurance Act, we:

- indicated that we would make available insurance for such losses in the same manner as we provide insurance for other types of losses;

- specified the premium we would charge, if any, for providing such insurance; and

- except to the extent prohibited by law, gave you the opportunity to reject such insurance and have a terrorism exclusion, sublimit or other limitation included in your policy.

This Important Notice refers back to that Important Notice and provides information about your decision and the manner in which your policy has been subsequently modified.

If:

- You rejected terrorism insurance under the Terrorism Risk Insurance Act, your policy includes the appropriate amendatory endorsement(s).

- You did not reject terrorism insurance under the Terrorism Risk Insurance Act, the premium charged for your policy, including that portion applicable to terrorism insurance under the Terrorism Risk Insurance Act, is shown in your policy. To the extent your policy includes a limitation on terrorism insurance, it has been modified so that such limitation does not apply to terrorism insurance under the Terrorism Risk Insurance Act.

Please carefully review your policy and the Important Notice previously provided to you for further details. Please remember that only the terms of your policy establish the scope of your insurance protection.

**Please note that if your policy**:

- ***provides commercial property insurance in a jurisdiction that has a statutory standard fire policy, the premium we charge for terrorism insurance under the Terrorism Risk Insurance Act, includes an amount attributable to the insurance provided pursuant to that standard fire policy. Rejection of such statutory insurance is legally prohibited***.

- ***is a workers compensation policy, rejection of insurance for terrorism is legally prohibited***.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

 

**EXECUTIVE RISK INDEMNITY INC.**
a stock insurance company incorporated under the laws of Delaware
202 Hall's Mill Road
Whitehouse Station, New Jersey 08889

## COMMON POLICY
## DECLARATIONS

| Policy Number 54303184-04 | Policy Period | From 08/01/2020     To 08/01/2021 |
|---|---|---|
| | | 12:01 A.M, at the Named Insured's Mailing Address |

Transaction Renewal

Pay Plan:  Full Pay

| Named Insured and Mailing Address:<br>HUB FOUNDATION CO., INC.<br>139 BILLERICA ROAD<br>CHELMSFORD, MA 01824 | Producer: | Astrus Insurance Solutions, LLC<br>800 E. Colorado Blvd<br>Suite 100<br>Pasadena, CA 91101 |
|---|---|---|
| | Telephone: | (626) 787-2900 |

Business Description    DRILLING CONTRACTOR

Your acceptance of this policy terminates, effective with the inception of this policy, any prior policy of the same number issued to you by us.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PART DESCRIPTION | | PREMIUM |
|---|---|---|
| **GENERAL LIABILITY COVERAGE PART** | $ | 135,000.00 |
| **POLICY PREMIUM** | $ | 135,000.00 |
| **DEPOSIT PREMIUM** | $ | 135,000.00 |
| **TAXES AND SURCHARGES** | $ | 0.00 |
| **TOTAL DEPOSIT PREMIUM** | $ | 135,000.00 |

| **Forms applicable to all Coverage Parts:**   See Forms and Endorsements schedule |
|---|

These Declarations together with the issued common policy conditions, coverage declarations, coverage form(s), and form(s) and endorsements, if any, complete the above numbered policy.

In Witness Whereof the Company issuing this policy has caused this policy to be signed by its authorized officers, but this policy shall not be valid unless also signed by a duly authorized representative of the company.

Countersigned:

President                                    Secretary

Issued Date: 09-17-20

10-02-2040 (Ed. 12-09)

Includes copyrighted material of ISO Properties, Inc., with its permission.

INSURED COPY

 **EXECUTIVE RISK INDEMNITY INC.**
a stock insurance company incorporated under the laws of Delaware
202 Hall's Mill Road
Whitehouse Station, New Jersey 08889

**Policy Number:** 54303184-04

**Named Insured:** HUB FOUNDATION CO., INC.

## POLICY INTEREST SCHEDULE

### NAMED INSURED SCHEDULE

MAXWELL FAMILY REALTY TRUST


ROCHAMBEAU, LLC

Issued Date: 09-17-20

10-02-2040 (Ed. 12-09)                    INSURED COPY

 **EXECUTIVE RISK INDEMNITY INC.**
a stock insurance company incorporated under the laws of Delaware
202 Hall's Mill Road
Whitehouse Station, New Jersey 08889

Policy Number: 54303184-04

Named Insured: HUB FOUNDATION
CO., INC.

## FORMS AND ENDORSEMENT SCHEDULE

| Coverage Part | Form Nbr. | Ed. Date | Description |
|---|---|---|---|
| | IL0197 | 09-08 | Rhode Island Changes |
| | 10-02-1934 | 03-10 | New York Changes Premium Audit |
| | 10-02-2448 | 09-17 | Revised Other Insurance Provision |
| | 10-02-2488 | 09-17 | Composite Premium Rating Plan |
| | IL0135 | 01-19 | New Hampshire Changes - Cancellation And Nonrenewal |
| | 10-02-2052 | 12-09 | Contractual Liability - Railroads |
| | IL0021 | 09-08 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| | CG2621 | 10-91 | New York Changes - Transfer Of Duties When A Limit Of Insurance Is Used Up |
| | CG0306 | 01-96 | New Hampshire Changes - Deductible Liability Insurance |
| | 10-02-2464 | 07-15 | Nonowned Watercraft Extension |
| | CG2010 | 10-01 | Additional Insured - Owners, Lessees Or Contractors - Scheduled Person Or Organization |
| | CG2146 | 07-98 | Abuse Or Molestation Exclusion |
| | MANUSCRIPT-UPLOAD | 01-10 | Who is an Insured Injury to Fellow Employee |
| | IL0268 | 08-08 | New York Changes - Cancellation And Nonrenewal |
| | CG2655 | 11-08 | New Hampshire Changes - Amendment of Representations Condition |
| | CG2109 | 06-15 | Exclusion - Unmanned Aircraft |
| | 10-02-2494 | 07-15 | Notice Of Cancellation Or Non-Renewal To Specified Persons Or Organizations |
| | CG0224 | 10-93 | Earlier Notice Of Cancellation Provided By Us |
| | CG2037 | 04-13 | Additional Insured - Owners, Lessees Or Contractors - Completed Operations |
| | CG2134 | 01-87 | Exclusion - Designated Work |
| | IL0161 | 03-12 | Rhode Island Changes - Civil Union |
| | 10-02-2450 | 07-15 | Unintentional Errors And Omissions |
| | 10-02-2451 | 07-15 | Knowledge And Notice Of An Occurrence |
| | 10-02-1935 | 10-10 | New York Changes- Commercial General Liability Form |
| | 10-02-2461 | 07-15 | Primary Insurance For Scheduled Additional Insured |
| | 10-02-2472 | 09-17 | Amendment Of Insuring Agreement - Prior Occurrences |
| | CG2032 | 04-13 | Additional Insured - Engineers, Architects Or Surveyors Not Engaged By The Named Insured |
| | MANUSCRIPT-UPLOAD | 01-10 | Non-Renewal Notice Amended |
| | IL0128 | 09-08 | Rhode Island Changes - Prejudgment Interest |
| | 10-02-1800 | 09-17 | Commercial General Liability Coverage Form |
| | 10-02-2493 | 08-18 | Wrap-Up Exclusion With Limited Exceptions For Your Work |
| | 10-02-2511 | 07-15 | Non-Renewal Notice Amended |
| | CG2010 | 04-13 | Additional Insured - Owners, Lessees Or Contractors - Scheduled Person Or Organization |

Issued Date: 09-17-20

10-02-2040 (Ed. 12-09)                                    INSURED COPY

**CHUBB**° **EXECUTIVE RISK INDEMNITY INC.**
a stock insurance company incorporated under the laws of Delaware
202 Hall's Mill Road
Whitehouse Station, New Jersey 08889

Policy Number: 54303184-04

Named Insured: HUB FOUNDATION
CO., INC.

| | | |
|---|---|---|
| CG2279 | 04-13 | Exclusion - Contractors - Professional Liability |
| CG2414 | 04-13 | Waiver Of Governmental Immunity |
| CG2503 | 05-09 | Designated Construction Project(s) General Aggregate Limit |
| IL0017 | 11-98 | Common Policy Conditions |
| IL0219 | 06-15 | Vermont Changes - Cancellation and Nonrenewal |
| 10-02-1562 | 07-15 | OFAC requirement |
| 10-02-2528 | 12-15 | Changes Contractual Liability and Supplementary Payments |
| 10-02-2463 | 08-18 | Anti-Stacking |
| CG2155 | 09-99 | Total Pollution Exclusion With A Hostile Fire Exception |
| 10-02-2472 | 07-15 | Amendment Of Insuring Agreement - Prior Occurrences |
| IL0247 | 02-11 | Maine Changes - Cancellation And Nonrenewal |
| IL0273 | 01-10 | Rhode Island Changes - Cancellation And Nonrenewal |
| IL0126 | 09-08 | Vermont Changes - Statutory Liability |
| 10-02-2517 | 07-15 | NH Extended Reporting period of EBLI |
| 10-02-2516 | 07-15 | NH EBLI Coverage |
| CG0112 | 12-19 | New Hampshire Changes |
| CG2037 | 10-01 | Additional Insured - Owners, Lessees Or Contractors - Completed Operations |
| MANUSCRIPT-UPLOAD | 01-10 | Primary Insurance for Scheduled Additional Insureds |
| IL0109 | 09-08 | Vermont Changes - Civil Union |
| CG2175 | 01-15 | Exclusion Of Certified Acts Of Terrorism And Exclusion Of Other Acts Of Terrorism Committed Outside The United States |
| 10-02-2454 | 07-15 | Broad Form Named Insured |
| 10-02-1802 | 05-07 | Employee Benefits Liability |
| 10-02-2492 | 07-15 | Notice Of An Occurrence - Workers' Compensation-Related |
| 10-02-2490 | 04-16 | Deductible Endorsement |
| 10-02-2476 | 07-15 | Who Is An Insured - Injury To Fellow Employee - Scheduled Employees |
| CG2034 | 04-13 | Additional Insured - Lessor Of Leased Equipment - Automatic Status When Required In Lease Agreement With You |
| CG2186 | 12-04 | Exclusion - Exterior Insulation And Finish Systems |
| 10-02-2484 | 07-15 | Extension Of Personal And Advertising Injury Coverage - Deletion Of Contracts Exclusion |
| CG2404 | 12-19 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us (Waiver Of Subrogation) |

 **EXECUTIVE RISK INDEMNITY INC.**
a stock insurance company incorporated under the laws of Delaware
202 Hall's Mill Road
Whitehouse Station, New Jersey 08889

## GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

| | | | |
|---|---|---|---|
| **Policy Number** 54303184-04 | | **Policy Period From** 08/01/2020 | **To** 08/01/2021 |

12:01 A.M. Standard Time at the Named Insured's Address

| | |
|---|---|
| **Transaction** | **Renewal** |
| **Pay Plan:** | **Full Pay** |

**Named Insured and Address**
HUB FOUNDATION CO., INC.
139 BILLERICA ROAD
Chelmsford, Massachusetts 01824

**Producer:** Astrus Insurance Solutions, LLC
800 E. Colorado Blvd
Suite 100
Pasadena, California 91101

**Telephone:** (626) 787-2900

| Business Description | Type of Business | Audit Period |
|---|---|---|
| DRILLING CONTRACTOR | Corporation | Annual |

Your acceptance of this policy terminates, effective with the inception of this policy, any prior policy of the same number issued to you by us.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit | $1,000,000 | |
| Damage To Premises Rented To You Limit | $100,000 | Any one premises |
| Medical Expense Limit | $5,000 | Any one person |
| Personal & Advertising Injury Aggregate Limit | $1,000,000 | |
| General Aggregate Limit | $2,000,000 | |
| Products - Completed Operations Aggregate Limit | $2,000,000 | |

## LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:

Per schedule on file with the company.

## CLASSIFICATIONS

Refer to the Extension Of Declarations.

## FORMS AND ENDORSEMENTS

Refer to the Forms And Endorsements Schedule.

These Declarations together with the issued common policy conditions, coverage part declarations, coverage part coverage form(s) and form(s) and endorsements, if any, complete the above numbered policy.

Includes copyrighted material of ISO Properties, Inc., with its permission

Issued Date: 09-17-20
10-02-2041 (Ed. 12-09)                          INSURED COPY

**CHUBB®**  **EXECUTIVE RISK INDEMNITY INC.**
a stock insurance company incorporated under the laws of Delaware
202 Hall's Mill Road
Whitehouse Station, New Jersey 08889

**Policy Number : 54303184-04**

**Named Insured:  HUB FOUNDATION CO.,
INC.**

## COMMERCIAL GENERAL LIABILITY
## EXTENSION OF DECLARATIONS

## CLASSIFICATION & PREMIUM

| | | | | | Rate | | Advance Premium | |
|---|---|---|---|---|---|---|---|---|
| Location | Classification | Code No. | Exposure | Basis | Prem. Ops. | Prod/Comp Ops. | Prem. Ops. | Prod/Comp Ops. |
| | SEE FORM 10-02-2488 COMPOSITE PREMIUM RATING PLAN ENDORSEMENT | | | | | | | |

**Extension of Declarations - Total Advance Annual Premium**        $135,000

Includes copyrighted material of ISO Properties, Inc., with its permission

Issued Date: **09-17-20**
10-02-2041 (Ed. 12-09)                    INSURED COPY

Chubb. Insured.℠

POLICY NUMBER: 54303184-04                    **COMMERCIAL GENERAL LIABILITY**
                                              **10-02-2488 (Rev. 9-17)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMPOSITE PREMIUM RATING PLAN

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK DEPARTMENT OF TRANSPORTATION

The following is added to **SECTION IV – CONDITIONS**:

The premium for this policy shall be computed upon a composite rate basis in accordance with our rules, rates, rating plans, and other terms of the policy.

| Name/Basis | Exposure | Composite Rate | Estimated Premium |
|---|---|---|---|
| PER $1000 OF GROSS SALES | $18,000,000 | $7.5 | $135,000 |
| PER $1000 OF GROSS SALES (NEW YORK) | $0 | $21.00 | $0 |

COMMERCIAL GENERAL LIABILITY
Form 10-02-1800 (Rev. 09-17)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II — Who Is An Insured**.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V — Definitions**.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay damages that the insured becomes legally obligated to pay for "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III — Limits Of Insurance**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II — Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II — Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages for the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**d.** Damages for "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" arising out of an act that:

**(1)** Is expected or intended from the standpoint of the insured; or

**(2)** Would be expected or intended from the standpoint of a reasonable person in the circumstances of the insured;

to cause "bodily injury" or "property damage", even if the actual "bodily injury" or "property damage" is of a different degree or type than intended or expected.

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any person or organization may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol;

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages; or

**(4)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol in connection with any circumstances described in **c.(1)**, **(2)**, or **(3)** above.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

For the purposes of this exclusion, consumption of alcoholic beverages brought on your premises (whether or not a fee is charged or a license is required for such activity) will not be deemed, in itself, to constitute the business of furnishing, selling or serving alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    **(i)** Any insured; or

    **(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages for "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**j. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**k. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**l. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**m. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**n. Personal And Advertising Injury**

"Bodily injury" arising out of "advertising injury" or "personal injury".

**o. Access To Or Disclosure Of Confidential Or Personal Information And Data-Related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **m.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III –** Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay damages that the insured becomes legally obligated to pay for "advertising injury" or "personal injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "advertising injury" or "personal injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III –** Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments **–** Coverages **A** and **B.**

**b.** This insurance applies to "advertising injury" or "personal injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Advertising injury" or "personal injury" arising out of an offense committed by or on behalf of the insured, that:

**(1)** Is intended by such insured; or

**(2)** Would be expected from the standpoint of a reasonable person in the circumstances of such insured;

to cause injury.

**b. Publications With Knowledge Of Falsity**

"Advertising injury" or "personal injury" arising out of any electronic, oral, written or other publication of content or material by or with the consent of the insured:

**(1)** With knowledge of its falsity; or

**(2)** If a reasonable person in the circumstances of such insured would have known such content or material to be false.

c. **Prior Offenses**

"Advertising injury" or "personal injury" arising out of any offense first committed before the beginning of the policy period.

d. **Crime Or Fraud**

"Advertising injury" or "personal injury" arising out of any criminal or fraudulent conduct committed by or with the consent or knowledge of the insured.

e. **Contracts**

"Advertising injury" or "personal injury" for which the insured is obligated to pay damages by reason of assumption of liability in a contract or agreement. This exclusion does not apply to the liability for damages:

**(1)** That such insured would have in the absence of such contract or agreement; or

**(2)** Assumed in a written contract or agreement that is an "insured contract", provided the "advertising injury" or "personal injury" to which this insurance applies is caused by an offense first committed after the execution of such contract or agreement.

f. **Breach Of Contract**

"Advertising injury" or "personal injury" arising out of breach of contract.

g. **Failure To Conform To Representations Or Warranties**

"Advertising injury" or "personal injury" arising out of the failure of goods, products or services to conform with any electronic, oral, written or other representation or warranty of durability, fitness, performance, quality or use.

h. **Wrong Description Of Prices**

"Advertising injury" or "personal injury" arising out of the wrong description of the price of goods, products or services.

i. **Media Type Businesses**

"Advertising injury" or "personal injury" arising out of an offense committed by or on behalf of an insured whose business is advertising, broadcasting, cablecasting, publishing, telecasting or telemarketing.

This exclusion does not apply to "personal injury" caused by an offense described in Paragraphs **21. a., b.** and **c.** of the definition of "personal injury" under the Definitions Section.

j. **Internet Activities**

"Advertising injury" or "personal injury" arising out of:

**(1)** Controlling, creating, designing or developing of another's Internet site;

**(2)** Controlling, creating, designing, developing, determining or providing the content or material of another's Internet site;

**(3)** Controlling, facilitating or providing, or failing to control, facilitate or provide, access to the Internet or another's Internet site; or

**(4)** Publication of content or material on or from the Internet, other than material developed by you to or at your direction.

k. **Continuing Offenses**

"Advertising injury" or "personal injury" that arises out of that part of an offense that continues or resumes after the later of the end of the policy period of:

**(1)** This insurance; or

**(2)** A subsequent, continuous renewal or replacement of this insurance, that:

    **(a)** Is issued to you by us or by an affiliate of ours;

    **(b)** Remains in force while the offense continues; and

    **(c)** Would otherwise apply to "advertising injury" and "personal injury".

l. **Pollution**

"Advertising injury" or "personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

m. **Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

n. **Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

    **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

        **(1)** On premises you own or rent;

        **(2)** On ways next to premises you own or rent; or

        **(3)** Because of your operations;

        provided that:

            **(a)** The accident takes place in the "coverage territory" and during the policy period;

            **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

            **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

    **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

        **(1)** First aid administered at the time of an accident;

        **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

        **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

    **a. Any Insured**

    To any insured, except "volunteer workers".

    **b. Hired Person**

    To a person hired to do work for or on behalf of any insured or a tenant of any insured.

    **c. Injury On Normally Occupied Premises**

    To a person injured on that part of premises you own or rent that the person normally occupies.

    **d. Workers Compensation And Similar Laws**

    To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

    **e. Athletics Activities**

    To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

    **f. Products-Completed Operations Hazard**

    Included within the "products-completed operations hazard".

    **g. Coverage A Exclusions**

    Excluded under Coverage **A.**

## COVERAGE FORM EXCLUSIONS

The following exclusions apply to all Coverages in this Coverage Form and all endorsements attached to it.

**1. Asbestos, Silica Or Similar Compounds, Including Mixed Dust**

    **a.** This insurance does not apply to any damages, loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of:

        **(1)** "Asbestos";

        **(2)** "Silica"; or

        **(3)** "Mixed dust".

    **b.** This insurance does not apply to any damages, loss, cost or expense arising, in whole or in part, out of any:

        **(1)** Demand, order, request or regulatory or statutory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess; or

        **(2)** Claim or proceeding by or on behalf of a governmental authority or others for any damages, loss, cost or expense because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing;

    the effects of "asbestos", "silica" or "mixed dust".

**2. Employment-Related Practices**

    This insurance does not apply to any damages, loss, cost or expense sustained at any time by:

    **a.** Any person, whether or not sustained in the course of employment by any insured, arising out of any employment-related act, omission,

policy, practice or representation directed at such person, occurring in whole or in part at any time, including any:

(1) Arrest, detention or imprisonment;

(2) Breach of any express or implied covenant;

(3) Coercion, criticism, humiliation, prosecution or retaliation;

(4) Defamation or disparagement;

(5) Demotion, discipline, evaluation or reassignment;

(6) Discrimination, harassment or segregation;

(7) **(a)** Eviction; or
   **(b)** Invasion or other violation of any right of occupancy;

(8) Failure or refusal to advance, compensate, employ or promote;

(9) Invasion or other violation of any right of privacy or publicity;

(10) Termination of employment; or

(11) Other employment-related act, omission, policy, practice, representation or relationship in connection with any insured at any time.

**b.** The brother, child, parent, sister or spouse of such person at whom any employment-related act, omission, policy, practice or representation is directed, as described in paragraph **a.** above, as a consequence thereof.

This exclusion applies:

**i.** Whether the insured may be liable as an employer or in any other capacity; and

**ii.** To any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

**3. Enhancement, Maintenance Or Prevention Expenses**

This insurance does not apply to any loss, cost or expense incurred by you or others for any:

**a.** Enhancement or maintenance of any property; or

**b.** Prevention of any injury or damage to any:

(1) Person or organization; or

(2) Property you own, rent or occupy.

**4. Fungi Or Bacteria**

This insurance does not apply to:

**a.** "Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of "fungi" or bacteria.

**b.** Any damages, loss, cost or expense arising out of any:

(1) Demand, order, request or regulatory or statutory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess; or

(2) Claim or proceeding by or on behalf of a governmental authority or others for any damages, loss, cost or expense because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing;

the effects of "fungi" or bacteria.

**5. Information Laws, Including Unauthorized Or Unsolicited Communications**

This insurance does not apply to any damages, loss, cost or expense arising out of any actual or alleged violation of:

**a.** The United States of America CAN-SPAM Act of 2003 (or any law amendatory thereof) or any similar regulatory or statutory law in any other jurisdiction;

**b.** The United States of America Telephone Consumer Protection Act (TCPA) of 1991 (or any law amendatory thereof) or any similar regulatory or statutory law in any other jurisdiction;

**c.** The United States of America Fair Credit Reporting Act (FCRA) (or any law amendatory thereof including the Fair and Accurate Credit Transactions Act (FACTA)) or any similar regulatory or statutory law in any other jurisdiction; or

**d.** Any other regulatory or statutory law in any jurisdiction that addresses, limits or prohibits the collecting, communicating, disposal, dissemination, distribution, monitoring, printing, publication, recording, sending or transmitting of content, information or material.

**6. Intellectual Property Laws And Rights**

This insurance does not apply to any damages, loss, cost or expense arising out of, giving rise to or in any way related to any actual, alleged or threatened:

**a.** Assertion; or

b. Infringement or violation;

by any person or organization (including any insured) of any "intellectual property law or right".

Further, this insurance does not apply to the entirety of all allegations in any claim or "suit", if such claim or "suit" includes an allegation of or a reference to an infringement or violation of any "intellectual property law or right", even if this insurance would otherwise apply to any part of the allegations in the claim or "suit".

This exclusion applies unless the only infringement or violation of an "intellectual property law or right" is an offense described in the definition of "advertising injury" to which this insurance applies.

7. **Lead**

a. This insurance does not apply to any damages, loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of "lead".

b. This insurance does not apply to any damages, loss, cost or expense arising, in whole or in part, out of any:

(1) Demand, order, request or regulatory or statutory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess; or

(2) Claim or proceeding by or on behalf of any governmental authority or others for any damages, loss, cost or expense because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing;

the effects of "lead".

8. **War**

This insurance does not apply to any damages, loss, cost or expense, however caused, arising, directly or indirectly, out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury", "advertising injury" or "personal injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages for the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by, or

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However,coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

No person or organization is an insured with respect to the:

a. Ownership, maintenance or use of any assets; or

b. Conduct of any person or organization whose assets, business or organization;

you acquire, either directly or indirectly, for any:

a. "Bodily injury" or "property damage" that occurred; or

b. "Advertising injury" or "personal injury" arising out of an offense first committed;

in whole or in part, before you, directly or indirectly, acquired such assets, business or organization.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

 a. Medical expenses under Coverage **C**; and

 b. Damages under Coverage **A**, except damages for "bodily injury" or "property damage" included in the "products-completed operations hazard".

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages for "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. The Personal and Advertising Injury Aggregate Limit is the most we will pay for the sum of damages under Coverage **B**.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

 a. Damages under Coverage **A**; and

 b. Medical expenses under Coverage **C**

 for all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages for "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

 a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

 (1) How, when and where the "occurrence" or offense took place;

 (2) The names and addresses of any injured persons and witnesses; and

 (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

 b. If a claim is made or "suit" is brought against any insured, you must:

 (1) Immediately record the specifics of the claim or "suit" and the date received; and

 (2) Notify us as soon as practicable.

 You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

 c. You and any other involved insured must:

 (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

 (2) Authorize us to obtain records and other information;

 (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

 (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured for injury or damage to which this insurance may also apply.

 d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

 a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

 b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** We may audit your books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Or Waiver Of Rights Of Recovery Against Others To Us**

We will waive the right of recovery we would otherwise have had against another person or organization, for loss to which this insurance applies, provided the insured has waived their rights of recovery against such person or organization in a contract or agreement that is executed before such loss.

To the extent that the insured's rights to recover all or part of any payment made under this Coverage Part have not been waived, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

This condition does not apply to Coverage **C**.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services.

"Advertisement" does not include any e-mail address, Internet domain name or other electronic address or metalanguage.

**2.** "Advertising injury" means injury, other than "bodily injury", "property damage" or "personal injury", sustained by a person or organization and caused by an offense of infringing, in that particular part of your "advertisement" about your goods, products or services, upon their:

**a.** Copyrighted "advertisement"; or

**b.** Registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

**3.** "Asbestos" means asbestos in any form, including its presence or use in any alloy, by-product, compound or other material or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**4.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**5.** "Bodily injury" means physical:

**a.** Injury;

**b.** Sickness; or

**c.** Disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time.  All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Advertising injury" or "personal injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**7.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**8.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**9.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**10.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**12.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**13.** "Intellectual property law or right" means any:

**a.** Certification mark, copyright, patent or trademark (including collective or service marks);

**b.** Right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

**c.** Other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

**d.** Other judicial or statutory law concerning piracy, passing off or similar practices.

**14.** "Lead" means the element lead in any form, including its presence or use in any alloy, by-product, compound or other material or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Includes copyrighted material of ISO Properties, Inc., with its permission            Form 10-02-1800 (Rev. 09-17)

15. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

16. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

17. "Mixed dust" means any combination or mixture of "asbestos" or "silica" and any other dust, fibers or particles, in any form, including any presence or use in any alloy, by-product, compound or other material or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

18. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers; or

   f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

   However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

19. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

20. "Personal and advertising injury" means:

   a. "Advertising injury"; or

   b. Personal injury".

21. "Personal injury" means injury, other than "bodily injury", "property damage" or "advertising injury", caused by an offense of:

   a. False arrest, false detention or other false imprisonment;

   b. Malicious prosecution;

   c. Wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner; or

   d. Electronic, oral, written or other publication of material that:

      (1) Libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or

(2) Violates a person's right of privacy.

22. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

23. "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   **(a)** When all of the work called for in your contract has been completed.

   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

24. "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

25. "Silica" means silica in any form (including silicates or other similar silicon compounds), including its presence or use in any alloy, by-product, compound or other material or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

26. "Suit" means a civil proceeding in which damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

27. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

28. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

29. "Your product":

   **a.** Means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)** You;

   **(b)** Others trading under your name; or

   **(c)** A person or organization whose business or assets you have acquired; and

   **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**30.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

POLICY NUMBER: 54303184-04

COMMERCIAL GENERAL LIABILITY
CG 20 10 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| WHERE REQUIRED BY WRITTEN CONTRACT. | ALL LOCATIONS WHERE REQUIRED BY WRITTEN CONTRACT. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 04 13

© Insurance Services Office, Inc., 2012

**Page 1 of 2**

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    **1.** Required by the contract or agreement; or

    **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER: 54303184-04

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| WHERE REQUIRED BY WRITTEN CONTRACT, BUT ONLY WHERE THE CONTRACT SPECIFIES COVERAGE FOR COMPLETED OPERATIONS. | ALL LOCATIONS WHERE REQUIRED BY WRITTEN CONTRACT. |
| | |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER: 54303184-04

COMMERCIAL GENERAL LIABILITY
CG 20 10 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| BARR & BARR, INC. | 24 SUPERIOR DRIVE, SUITE 301, NATICK, MA 01760 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**CG 20 10 04 13**                    © Insurance Services Office, Inc., 2012                    **Page 1 of 2**

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER: 54303184-04                    **COMMERCIAL GENERAL LIABILITY**
                                              **CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| BARR & BARR, INC. | 24 SUPERIOR DRIVE, SUITE 301, NATICK, MA 01760 |
| | |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER: 54303184-04

**COMMERCIAL GENERAL LIABILITY**
CG 20 10 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name of Person or Organization: |
| --- |
| WHERE REQUIRED BY WRITTEN CONTRACT WHEN THE WRITTEN CONTRACT SPECIFICALLY REQUIRES CG 2010 1185 OR CG 2010 1001. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2. Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

POLICY NUMBER:  54303184-04

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name of Person or Organization:** |
| WHERE REQUIRED BY WRITTEN CONTRACT WHEN THE WRITTEN CONTRACT REQUIRES COMPLETED OPERATIONS ADDITIONAL INSURED STATUS FOR THE POLICY TERM AND SPECIFICALLY REQUIRES CG 2010 1185 OR CG 2037 1001. |
| **Location And Description of Completed Operations:** |
|   ALL LOCATIONS WHERE REQUIRED BY WRITTEN CONTRACT. |
| **Additional Premium:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

POLICY NUMBER: 54303184–04

**COMMERCIAL GENERAL LIABILITY**
**CG 20 32 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – ENGINEERS, ARCHITECTS OR SURVEYORS NOT ENGAGED BY THE NAMED INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Engineers, Architects Or Surveyors Not Engaged By The Named Insured: |
|---|
| WHERE REQUIRED BY WRITTEN CONTRACT. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the architects, engineers or surveyors shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations performed by you or on your behalf.

Such architects, engineers or surveyors, while not engaged by you, are contractually required to be added as an additional insured to your policy.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services, including:

**1.** The preparing, approving, or failing to prepare or approve, maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**2.** Supervisory, inspection or engineering services.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional services.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

  **1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

**CG 20 32 04 13**

**COMMERCIAL GENERAL LIABILITY**
**CG 20 34 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT – AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) from whom you lease equipment when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person(s) or organization(s) is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement you have entered into with the additional insured; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER: 54303184-04                                     **COMMERCIAL GENERAL LIABILITY**
                                                               **CG 02 24 10 93**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EARLIER NOTICE OF CANCELLATION PROVIDED BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Number of Days' Notice** 60

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

**COMMERCIAL GENERAL LIABILITY**
**CG 21 09 06 15**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(e) "Bodily injury" or "property damage" arising out of:

    (i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    (ii) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

    **2. Exclusions**

    This insurance does not apply to:

    **Unmanned Aircraft**

    "Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

    **a.** The use of another's advertising idea in your "advertisement"; or

    **b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

POLICY NUMBER: 54303184-04                    **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:**

ALL WORK IN NEW YORK CITY

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

COMMERCIAL GENERAL LIABILITY
CG 21 46 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

**2.** The negligent:

  **a.** Employment;

  **b.** Investigation;

  **c.** Supervision;

  **d.** Reporting to the proper authorities, or failure to so report; or

  **e.** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

**COMMERCIAL GENERAL LIABILITY**
**CG 21 55 09 99**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COMMERCIAL GENERAL LIABILITY**
**CG 21 75 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015         **CG 21 75 01 15**

**COMMERCIAL GENERAL LIABILITY**
**CG 21 86 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

  **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

  **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

  **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

  **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

  **3.** A reinforced or unreinforced base coat;

  **4.** A finish coat providing surface texture to which color may be added; and

  **5.** Any flashing, caulking or sealant used with the system for any purpose.

**COMMERCIAL GENERAL LIABILITY
CG 22 79 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

**a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

**b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

**2.** Subject to Paragraph **3.** below, professional services include:

**a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

**b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.** Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

**CG 22 79 04 13**          © Insurance Services Office, Inc., 2012          **Page 1 of 1**

POLICY NUMBER:  54303184-04

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      ELECTRONIC DATA LIABILITY COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART DESIGNATED SITES
      POLLUTION LIABILITY LIMITED COVERAGE PART DESIGNATED SITES
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      RAILROAD PROTECTIVE LIABILITY COVERAGE PART
      UNDERGROUND STORAGE TANK POLICY DESIGNATED TANKS

**SCHEDULE**

WHERE REQUIRED BY WRITTEN CONTRACT.

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery against the person(s) or organization(s) shown in the Schedule above because of payments we make under this Coverage Part. Such waiver by us applies only to the extent that the insured has waived its right of recovery against such person(s) or organization(s) prior to loss. This endorsement applies only to the person(s) or organization(s) shown in the Schedule above.

**COMMERCIAL GENERAL LIABILITY**
**CG 24 14 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF GOVERNMENTAL IMMUNITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

We will waive, both in the adjustment of claims and in the defense of "suits" against the insured, any governmental immunity of the insured, unless the insured requests in writing that we not do so.

Waiver of immunity as a defense will not subject us to liability for any portion of a claim or judgment in excess of the applicable limit of insurance.

POLICY NUMBER: 54303184-04

**COMMERCIAL GENERAL LIABILITY**
**CG 25 03 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Designated Construction Project(s): |
|---|
| ALL OF YOUR DESIGNATED CONSTRUCTION PROJECTS WHERE REQUIRED BY CONTRACT. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I – Coverage A,** and for all medical expenses caused by accidents under Section **I – Coverage C,** which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

3. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I – Coverage A,** and for all medical expenses caused by accidents under Section **I – Coverage C,** which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

    **1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

    **2.** Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section **III – Limits Of Insurance** not otherwise modified by this endorsement shall continue to apply as stipulated.

**Page 2 of 2**          © Insurance Services Office, Inc., 2008          **CG 25 03 05 09**   ☐

POLICY NUMBER:                                        **COMMERCIAL GENERAL LIABILITY**
                                                     **10-02-2511 (Ed. 7-15)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NON-RENEWAL NOTICE AMENDED

This endorsement modifies the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY **–** NEW YORK DEPARTMENT OF
TRANSPORTATION

**When We Do Not Renew** of **SECTION IV – CONDITIONS** is replaced by the following:

**When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than `SIXTY (60)` days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10-02-2511 (Ed. 7-15)**      Includes copyrighted material of Insurance Services Office, Inc.,      **Page 1 of 1**
with its permission.

POLICY NUMBER:                                          **COMMERCIAL GENERAL LIABILITY**
                                                       **10-02-2476 (Ed. 7-15)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WHO IS AN INSURED – INJURY TO FELLOW EMPLOYEE – SCHEDULED EMPLOYEES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Positions:** EXECUTIVE OFFICERS, MANAGERS AND SUPERVISORS

**A.** With respect only to an "employee" in a Position shown in the Schedule, Paragraph **2.a.(1)** of **SECTION II – WHO IS AN INSURED** does not apply to "bodily injury" caused by an "employee" in a Position shown in the Schedule to any co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business.

**B.** The following is added to Paragraph **4.b.(1)** of **Other Insurance** of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

This insurance is excess over any of the other insurance that is available to an "employee" in a Position shown in the Schedule, whether primary, excess, contingent or on any other basis that applies to "bodily injury" to a co-"employee" by such "employee".

**10-02-2476 (Ed. 7-15)**     Includes copyrighted material of Insurance Services Office, Inc.,     **Page 1 of 1**
                              with its permission.

POLICY NUMBER:                                      **COMMERCIAL GENERAL LIABILITY**
                                                    **10-02-2461 (Ed. 7-15)**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRIMARY INSURANCE FOR
# SCHEDULED ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Additional Insured:**                           **Location Of Covered Operations:**
WHERE REQUIRED BY WRITTEN CONTRACT.               ALL LOCATIONS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect only to the Additional Insured and at the Location Of Covered Operations shown in the Schedule, the following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Paragraph **4. Other Insurance** and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to the Additional Insured with respect to the Location Of Covered Operations shown in the Schedule under this policy provided that:

**(1)** The Additional Insured is a named insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the Additional Insured.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

    Copyright, Insurance Services Office, Inc., 1998       □

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

POLICY NUMBER: 54303184-04

**COMMERCIAL GENERAL LIABILITY**
**10-02-2448 (Rev. 9-17)**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# REVISED OTHER INSURANCE PROVISION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Paragraph **4. Other Insurance** is replaced by the following:

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with the permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos", or watercraft;

**(e)** That was purchased to cover any liability for damages arising out of any act, omission, premises or operations, or the "products and completed operations hazard" on which you or any other person or entity qualifying as an insured under **SECTION II – WHO IS AN INSURED**, including any Additional Insured endorsement, also qualifies as an additional insured of a policy issued to another person or entity; or

**(f)** That is available to any person or entity qualifying as an additional insured of this policy unless you have agreed, in a written contract, that the insurance under this policy for the additional insured will be primary to any policy issued to the additional insured as a named insured. The contract must be signed and executed prior to the date of loss.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend or participate in the defense of any insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we may undertake to do so, but we will be entitled to that insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.  Method of Sharing**

With respect only to those persons and organizations that qualify as a Named Insured under this Coverage Part:

**(1)** If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

**(2)** If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

As to any other insured, we will pay only to the actual extent of your liability.

POLICY NUMBER: 54303184-04

**COMMERCIAL GENERAL LIABILITY**
**10-02-2472 (Rev. 9-17)**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURING AGREEMENT – PRIOR OCCURRENCES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **1. Insuring Agreement** of **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by the following:

**1. Insuring Agreement**

  **a.** We will pay damages that the insured becomes legally obligated to pay for "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **(2)** The "bodily injury" or "property damage" first occurs during the policy period, regardless of when such "occurrence" giving rise to "bodily injury" or "property damage" takes place.

  **c.** All "bodily injury" or "property damage" caused by or arising out of an "occurrence" is deemed to first occur at the earliest of when:

    **(1)** Any "bodily injury" or "property damage" first becomes known, or should have been known from the standpoint of a reasonable person, to anyone;

    **(2)** It is alleged that any "bodily injury" or "property damage" first manifests;

    **(3)** Written or verbal notification of the alleged existence of a potential or actual claim for any "bodily injury" or "property damage" is received by any insured, its "employees", agents, parent or subsidiary organizations, directors, managers, members, officers, partners, subcontractors or representatives;

    **(4)** Any insured, its "employees", agents, parent or subsidiary organizations, directors, managers, members, officers, partners, or representatives knew, or should have known from the standpoint of a reasonable person, that any "bodily injury" or "property damage" has occurred; or

    **(5)** Any "bodily injury" or "property damage" actually began;

  regardless of whether the "bodily injury" or "property damage" results in additional related or unrelated claims, is continuous, progressive, repeated, changing or results from exposure to substantially the same general harm.

  **d.** Damages for "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

COMMERCIAL GENERAL LIABILITY
10-02-2528 (Ed. 12-15)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CHANGES – CONTRACTUAL LIABILITY EXCLUSION AND SUPPLEMENTARY PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

**A.** Paragraph **2.b.** of **Exclusions** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**B. SECTION I – SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** is replaced by the following:

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, as amended in Paragraph **A.** above, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          **10-02-2528 (Ed. 12-15)**

**IL 02 47 02 11**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MAINE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2., 4.** and **6.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.** We may cancel this policy by mailing or delivering written notice of cancellation to the first Named Insured. If we cancel, cancellation will not be effective prior to 10 days after the receipt by the first Named Insured of the notice of cancellation.

**4.** Notice of cancellation to the first Named Insured will state the effective date of and reasons for cancellation. The policy period will end on that date.

**6.** A post office certificate of mailing to the first Named Insured at the last known mailing address will be conclusive proof of receipt on the third calendar day after mailing.

**B.** If this policy has been in effect for 60 days or more, or if it is a renewal or continuation of a policy issued by us, the following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

**7.** We may cancel this policy only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Fraud or material misrepresentation made by you or with your consent in obtaining the policy, continuing the policy or in presenting a claim under the policy;

**c.** Substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including, but not limited to, an increase in exposure due to regulation, legislation or court decision;

**d.** Failure to comply with reasonable loss control recommendations;

**e.** Substantial breach of contractual duties, conditions or warranties; or

**f.** Determination by the superintendent of insurance that the continuation of a class or block of business to which the policy belongs will jeopardize our solvency or will place us in violation of the insurance laws of Maine or any other state.

**C.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

If we decide not to renew this policy, we will mail or deliver notice of nonrenewal to the first Named Insured. Nonrenewal will not be effective prior to 30 days after the receipt by the first Named Insured of the notice of nonrenewal. A post office certificate of mailing to the first Named Insured at the last known mailing address will be conclusive proof of receipt of notice on the third calendar day after mailing.

**D.** With respect to Physical Damage Coverage provided under the Commercial Automobile Coverage Part, we will provide like notice of cancellation or nonrenewal to any loss payee named in the policy.

**COMMERCIAL GENERAL LIABILITY**
**CG 01 12 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW HAMPSHIRE CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** If Endorsement **CG 21 09, CG 21 10, CG 24 50** or **CG 24 51** is attached to the Policy, Paragraph **A.2.g.(2)(e)** of Endorsement **CG 21 09, CG 21 10, CG 24 50** or **CG 24 51,** whichever is attached, is replaced by the following:

"Bodily injury" or "property damage" arising out of:

  **(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to registration for use on public roads where it is licensed or principally garaged;

  **(ii)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment"; or

  **(iii)** Any tractor with a farm tractor registration.

**B.** If Paragraph **A.** of this endorsement does not apply, Paragraph **g.(5)** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

"Bodily injury" or "property damage" arising out of:

  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to registration for use on public roads where it is licensed or principally garaged;

  **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment"; or

  **(c)** Any tractor with a farm tractor registration.

**C.** If Endorsement **CG 22 71** or **CG 22 72** is attached to the Policy, Paragraphs **A.** and **B.** of this endorsement do not apply with respect to the transportation of students related to the operation of any college or school by you or on your behalf.

**D.** The definitions of "auto" and "mobile equipment" in the **Definitions** section are replaced by the following:

  **1.** "Auto" means:

    **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    **b.** Any other land vehicle that is subject to registration for use on public roads where it is licensed or principally garaged.

  However, "auto" does not include "mobile equipment".

  **2.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **(1)** Power cranes, shovels, loaders, diggers or drills; or

      **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

© Insurance Services Office, Inc., 2019

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to registration for use on public roads where it is licensed or principally garaged. Land vehicles subject to registration for use on public roads are considered "autos".

POLICY NUMBER:  54303184-04                          **COMMERCIAL GENERAL LIABILITY**
                                                                          **CG 03 06 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW HAMPSHIRE CHANGES – DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

  COMMERCIAL GENERAL LIABILITY COVERAGE PART
  PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
|  | **PER CLAIM** or | **PER OCCURRENCE** |
| Bodily Injury Liability | $ | $ |
| OR |  |  |
| Property Damage Liability | $ | $ |
| OR |  |  |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ 1,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amount stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

**1.** PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

  **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

  **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

  **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

  **(1)** "Bodily injury";

  **(2)** "Property damage"; or

  **(3)** "Bodily injury" and "property damage" combined

  as the result of any one "occurrence".

  With respect to "property damage", person includes an organization.

**2.** PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

  **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

  **b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

CG 03 06 01 96                    Copyright, Insurance Services Office, Inc.,  1994                    **Page 1 of 2**          ☐

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2.** Your duties in the event of an "occurrence", claim or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

COMMERCIAL GENERAL LIABILITY
CG 26 55 11 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW HAMPSHIRE CHANGES – AMENDMENT OF REPRESENTATIONS CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The **Representations** Condition is replaced by the following:

**REPRESENTATIONS**

**1.** You represent that all information and statements contained in the Declarations are true, accurate and complete. All such information and statements are the basis for our issuing this policy.

**2.** Any intentional:

**a.** Misrepresentation;

**b.** Omission;

**c.** Concealment; or

**d.** Misstatement of a material fact;

in the Declarations or otherwise, which relates to a particular claim, shall be grounds to deny coverage.

CG 26 55 11 08                © Insurance Services Office, Inc., 2008                Page 1 of 1   ☐

IL 01 35 01 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW HAMPSHIRE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.a.** We may cancel this Policy by mailing or physically delivering to you written notice of cancellation, stating the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if:

**(a)** We cancel for nonpayment of premium;

**(b)** We cancel for substantial increase in hazard; or

**(c)** This is a new policy and its cancellation notice is mailed within the first 60 days of the effective date.

**(2)** 60 days before the effective date of cancellation if Paragraph **2.a.(1)** of this endorsement does not apply.

**b.** If this Policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Fraud or material misrepresentation affecting the Policy or in the presentation of a claim thereunder, or violation of any of the terms or conditions of the Policy; or

**(3)** Substantial increase in hazard; provided that cancellation for this reason shall be effective only after prior approval of the Commissioner.

**3.** We will mail or physically deliver our notice to your last mailing address known to us. If notice is mailed, it will be by:

**a.** Certified mail or certificate of mailing if cancellation is for nonpayment of premium; or

**b.** Certified mail if cancellation is for any other reason.

Proof that the notice was mailed in accordance with Paragraph **3.a.** or **3.b.** will be sufficient proof of notice.

**B.** Paragraph **6.** of the **Cancellation** Common Policy Condition is deleted.

**C.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

**1.** If we elect not to renew this Policy, we will mail or physically deliver written notice of nonrenewal, stating the reasons for nonrenewal, to your last mailing address known to us at least 60 days prior to the expiration of the Policy, or its anniversary date if it is a policy written for a term of more than one year.

**2.** However, we need not mail or physically deliver this notice if:

**(a)** We have indicated a willingness to renew;

**(b)** We refuse to renew due to nonpayment of premium;

**(c)** You do not pay any advance premium required by us for renewal; or

© Insurance Services Office, Inc., 2018

**(d)** Any property covered in this Policy is insured under any other insurance policy.

**3.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**Transfer of Duties When a Limit of Insurance Is Used Up.**

**a.** If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

**(1)** General Aggregate Limit (other than the Products/Completed Operations Aggregate Limit);

**(2)** Products/Completed Operations Aggregate Limit;

**(3)** Personal and Advertising Injury Limit;

**(4)** Each Occurrence Limit; or

**(5)** Fire Damage Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

**b.** When a limit of insurance described in paragraph **a.** above has actually been used up in the payment of judgments or settlements:

**(1)** We will notify the first Named Insured, in writing, as soon as practicable, that:

**(a)** Such a limit has actually been used up; and

**(b)** Our duty to defend "suits" seeking damages subject to that limit has also ended.

**(2)** We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

**(3)** The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**c.** The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b.(2)** above.

The duty of the first Named Insured to reimburse us will begin on:

**(1)** The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph **a.** above; or

**(2)** The date on which we sent notice in accordance with paragraph **b.(1)** above, if we did not send notice in accordance with paragraph a. above.

**d.** The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

**CG 26 21 10 91**          Copyright, Insurance Services Office, Inc., 1991          **Page 1 of 1**          ☐

IL 02 68 08 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **1., 2., 3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**2. Cancellation Of Policies In Effect**

**a. 60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **A.2.a.(2)** below.

**(2)** 15 days before the effective date of cancellation if we cancel for any of the following reasons:

**(a)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(b)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(c)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

**(d)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

**(e)** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**(f)** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

© Insurance Services Office, Inc., 2008

**(g)** A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

**(h)** Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

**b. For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in Paragraph **A.2.a.(2)** above, provided:

**(1)** We mail the first Named Insured written notice at least 15 days before the effective date of cancellation; and

**(2)** If we cancel for nonpayment of premium, our notice of cancellation informs the first Named Insured of the amount due.

**3.** We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If one of the reasons for cancellation in Paragraph **A.2.a.(2)** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**C.** The following conditions are added:

**1. Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph **C.3.** below.

**2. Conditional Renewal**

If we conditionally renew this policy subject to a:

**a.** Change of limits;

**b.** Change in type of coverage;

**c.** Reduction of coverage;

**d.** Increased deductible;

**e.** Addition of exclusion; or

**f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

**3. Notices Of Nonrenewal And Conditional Renewal**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

**(1)** The expiration date; or

**(2)** The anniversary date if this is a continuous policy.

**b.** Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2008

IL 02 68 08 08    ☐

**c.** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

**d.** If we violate any of the provisions of Paragraph **C.3.a., b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

   **(1)** Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

   **(2)** On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

**e.** If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

   **(1)** Upon expiration of the 60 day period; or

   **(2)** Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2)**, as of the renewal date of the policy if we send the first Named Insured the conditional renewal notice at least 30 days prior to the expiration or anniversary date of the policy.

**f.** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

**D.** The following provisions apply when the Commercial Property Coverage Part, the Farm Coverage Part or the Capital Assets Program (Output Policy) Coverage Part is made a part of this policy:

   **1.** Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

   **a.** The policy is issued or issued for delivery in New York State covering property located in this state; and

   **b.** The policy insures:

      **(1)** For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

      **(2)** For loss of or damage to personal property other than farm personal property or business property; or

      **(3)** Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

   **c.** The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

   **2.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

   **2. Procedure And Reasons For Cancellation**

   **a.** We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      **(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

      **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

   **b.** But if this policy:

      **(1)** Has been in effect for more than 60 days; or

      **(2)** Is a renewal of a policy we issued:

      we may cancel this policy only for one or more of the following reasons:

      **(1)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

      **(2)** Conviction of a crime arising out of acts increasing the risk of loss;

      **(3)** Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

**(4)** Discovery of willful or reckless acts or omissions increasing the risk of loss;

**(5)** Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

    **(a)** Issued the policy; or

    **(b)** Last voluntarily renewed the policy;

**(6)** The Superintendent of Insurance's determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

**(7)** Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

**3.** The following are added:

**a. Conditional Continuation**

Instead of cancelling this policy, we may continue it on the condition that:

**(1)** The policy limits be changed; or

**(2)** Any coverage not required by law be eliminated.

If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**b. Nonrenewal**

If, as allowed by the laws of New York State, we:

**(1)** Do not renew this policy; or

**(2)** Condition policy renewal upon:

    **(a)** Change of limits; or

    **(b)** Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

    **(a)** At least 45 days; but

    **(b)** Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**E.** The following is added to the Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions, the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

When the property is subject to the Anti-Arson Application in accordance with New York Insurance Department Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

**1.** Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

**2.** Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in **E.1.** and **E.2.** above supersede any contrary provisions in this policy including this endorsement.

If the notice in **E.1.** or **E.2.** above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**F.** The following applies to the Commercial Property Coverage Part, the Farm Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

Paragraphs **f.** and **g.** of the **Mortgageholders** Condition are replaced by the following:

**f. Cancellation**

**(1)** If we cancel this policy, we will give written notice to the mortgageholder at least:

    **(a)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

© Insurance Services Office, Inc., 2008

**IL 02 68 08 08**    ☐

**(2)** If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

**(a)** The effective date of cancellation of the insured's coverage; or

**(b)** 10 days after we give notice to the mortgageholder.

**g. Nonrenewal**

**(1)** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**(2)** If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

**(a)** The expiration date of the policy; or

**(b)** 10 days after we give notice to the mortgageholder.

**G.** The following provisions apply when the following are made a part of this policy:

Commercial General Liability Coverage Part

Employment-Related Practices Liability Coverage Part

Farm Liability Coverage Form

Liquor Liability Coverage Part

Products/Completed Operations Liability Coverage Part

**1.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

**2.** The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

IL 01 28 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES – PREJUDGMENT INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY – MORTGAGEHOLDER'S ERRORS AND OMISSIONS COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The paragraph in the **Supplementary Payments** Section relating to prejudgment interest is replaced by the following:

1. Prejudgment interest awarded against you* on the entire judgment if we reject a written settlement offer by the plaintiff that is equal to or less than the applicable limit of insurance in this policy; or

2. If Paragraph **1.** above does not apply, prejudgment interest awarded against you* on that part of the judgment we pay.

\* For the Commercial General Liability Coverage Part, Commercial Liability Umbrella Coverage Part, Employment-related Practices Liability Coverage Part, Farm Coverage Part, Farm Umbrella Liability Policy, Liquor Liability Coverage Part, Owners And Contractors Protective Liability Coverage Part, Pollution Liability Coverage Part, Products/Completed Operations Liability Coverage Part, Medical Professional Liability Coverage Part, Railroad Protective Liability Coverage Part and the Underground Storage Tank Policy the word you is replaced by the term "the insured".

IL 01 28 09 08 © ISO Properties, Inc., 2007 **Page 1 of 1** ☐

IL 01 61 03 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Rhode Island law.

**B.** Under the Commercial Automobile Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means a person related to:

**1.** An individual Named Insured by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of such Named Insured's household, including a ward or foster child;

**2.** The individual named in the Schedule by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached; or

**3.** You by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of your household, including a ward or foster child, if the Individual Named Insured endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Rhode Island law, who is a resident of your household, including a ward or foster child.

© Insurance Services Office, Inc., 2011

IL 01 97 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY – MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM LIABILITY COVERAGE FORM
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

When an insurer or its agents recover payment on a casualty loss from a third party through subrogation, the insurer must first pay the insured the deductible portion of the casualty loss, less the prorated share of subrogation expenses and thereafter retain any funds in excess of the deductible portion of the recovery.

**B.** The following provision is added:

**DIRECT LIABILITY OF INSURERS**

We will be directly liable for those sums the insured becomes legally obligated to pay as damages to the injured party to which this insurance applies. In the event of that injured party's death, we will be directly liable for those sums the insured becomes legally obligated to pay as damages to the party entitled to sue as a result of the injured party's death, and to which this insurance applies.

IL 02 73 01 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RHODE ISLAND CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** With respect to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions

Farm – Livestock Coverage Form

Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

Paragraph **1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by giving, mailing or delivering advance written notice of cancellation to us or to the insurance agent or producer who issued the policy.

**C.** With respect to all Coverage Parts and Policies addressed in this endorsement, the **Cancellation** Common Policy Condition is amended by replacing Paragraphs **2., 3., 5.** and **6.** with the following:

**2.** We may cancel this policy by giving, mailing or delivering to the first Named Insured and the insurance producer of record, if any, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

   c. Activities or omissions on your part which increase any hazard insured against, including a failure to comply with loss control recommendations;

   d. Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to regulation, legislation, or court decision;

   e. Loss or decrease of our reinsurance covering all or part of the risk or exposure covered by the policy;

   f. Determination by the Commissioner of Insurance that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of this state;

   g. Owner or occupant incendiarism;

   h. Violation or breach by you of any policy terms or conditions;

   i. Constructive or actual total loss of the Covered Property; or

   j. Such other reasons as may be approved by the Commissioner of Insurance.

**3.** We will give, mail or deliver written notice to the first Named Insured at the address shown on the policy, and to the insurance producer of record, if any.

However, with respect to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Employment-Related Practices Liability Coverage Part

Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions

Farm – Livestock Coverage Form

Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

We will give, mail or deliver written notice to the first Named Insured at the last address known to us, and to the insurance producer of record, if any.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

The cancellation will be effective even if we have not made or offered a refund.

The following provisions govern calculation of return premium:

   a. We will compute return premium pro rata and round to the next higher whole dollar when this policy is:

     (1) Cancelled at our request;

     (2) Cancelled because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

     (3) Cancelled and rewritten by us or a member of our company group;

     (4) Cancelled after the first year, if it is a prepaid policy written for a term of more than one year; or

     (5) Cancelled by us at the request of a premium finance company upon default of the first Named Insured, when this policy is financed under a premium finance agreement.

   b. When this policy is cancelled at your request (except when Paragraph **a.(2)**, **a.(3)** or **a.(4)** applies), we will return 90% (75% for Equipment Breakdown policies) of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years.

**6.** Proof of giving, mailing or delivering notice of cancellation will be sufficient proof of notice.

**D.** With respect to all Coverage Parts and Policies addressed in this endorsement, the following is added to the **Cancellation** Common Policy Condition:

   **7.** We will provide you with the reason or reasons for cancellation if:

     a. You request in writing a statement of the reasons for cancellation; and

     b. You agree in writing to hold us harmless from liability for any:

       (1) Communication giving notice of, or specifying the reasons for, cancellation; or

       (2) Statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation as provided under Paragraph **C.2.**

**E.** With respect to all Coverage Parts and Policies addressed in this endorsement, the following is added and supersedes any provision to the contrary:

**Nonrenewal**

  **1.** If we elect not to renew this policy, we will give, mail or deliver to the first Named Insured and the insurance producer of record, if any, written notice of nonrenewal at least 60 days before:

    **a.** The expiration date of the policy; or

    **b.** An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date.

  **2.** However, we need not give, mail or deliver this notice if:

    **a.** We have offered to issue a renewal policy; or

    **b.** The first Named Insured has obtained, or has agreed in writing to obtain, replacement coverage.

**F.** The following is added to the Common Policy Conditions with respect to the Coverage Parts to which this endorsement applies, except the Employment-Related Practices Liability Coverage Part:

If notice of nonrenewal is mailed to the insured, we shall forward the notice of nonrenewal to the last known address of the first Named Insured by first class mail and maintain proof of mailing by the United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

**G.** With respect to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions

Farm – Livestock Coverage Form

Farm – Mobile Agricultural Machinery And Equipment Coverage Form;

The following is added to the Common Policy Conditions:

If notice of cancellation is mailed to the insured, we shall forward the notice of cancellation to the last known address of the first Named Insured by first class mail and maintain proof of mailing by the United States Postal Service certificate of mailing. This proof of mailing will be sufficient proof of notice.

**H.** With respect to a loss payee named in the policy, if any, we will give, mail or deliver written notice of cancellation, subject to **C.2.** above, and written notice of nonrenewal, subject to **E.1.** above. Mailing will be accomplished in accordance with the applicable procedure stated in **F.** or **G.** above.

**I.** Under the **Mortgageholders** Condition, the paragraphs pertaining to cancellation and nonrenewal are replaced by the following:

  **1.** If we cancel this policy, we will give, mail or deliver written notice to the mortgageholder at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

  **2.** If we do not renew this policy, we will give, mail or deliver written notice to the mortgageholder at least 10 days before:

    **a.** The expiration date of the policy; or

    **b.** An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date.

© Insurance Services Office, Inc., 2010

IL 01 09 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VERMONT CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union under Vermont law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person, who is a resident of your household and is related to you by blood, adoption, including a ward or foster child, marriage, or civil union under Vermont law.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part or the Farm Umbrella Liability Policy, the term "family member" is replaced by the following:

"Family member" means a person, who is a resident of your household and is related to you by blood, adoption, including a ward or foster child, marriage, or civil union under Vermont law.

IL 01 26 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VERMONT CHANGES – STATUTORY LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY – MORTGAGEHOLDER'S ERRORS AND OMISSIONS COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**A.** In addition to paying and satisfying judicial judgments rendered against you* in consequence of claims to which this Coverage Part applies, we will protect you* against the levy of executions issued on such judgments or claims against you*.

**B.** We may, without your* consent, continue litigation after a judgment has been rendered with respect to your* legal liability under this Coverage Part for damages in a particular instance. In that event, no limitation of our liability will be valid where the matter of that litigation is concerned.

**C.** Under Coverage Forms to which this endorsement applies, any legal action against us to recover for loss under this Coverage Part must be brought within one year after amount of loss is finally established. The amount of loss can be established only by:

**1.** Judicial judgment; or

**2.** An agreement between the parties involved with our written consent.

**D.** In the event of your* bankruptcy or insolvency, an injured person or claimant who has obtained a judgment against you* may bring suit against us, provided:

**1.** The judgment was for damages covered by this policy; and

**2.** The suit is for damages in amounts no greater than the applicable Limits of Insurance of this policy.

**E.** Payment by you* of any judicial judgment or claim for any of our liability under this Coverage Part will not deprive you* of the right to bring action against us.

**\*** For the Commercial General Liability Coverage Part, Commercial Liability Umbrella Coverage Part, Employment-Related Practices Liability Coverage Part, Farm Coverage Part, Farm Umbrella Liability Policy, Liquor Liability Coverage Part, Owners And Contractors Protective Liability Coverage Part, Pollution Liability Coverage Part, Products/Completed Operations Liability Coverage Part, Medical Professional Liability Coverage Part and Railroad Protective Liability Coverage Part, the word "you" is replaced by the term "the insured" and the word "your" is replaced by the term "the insured's".

© ISO Properties, Inc., 2007

IL 02 19 06 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VERMONT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. Cancellation Of Policies In Effect For Less Than 60 Days.

   If this Policy has been in effect for less than 60 days and this Policy is not a renewal of a policy we issued, we may cancel this Policy by:

   **a.** Giving at least 15 days' notice prior to the cancellation date for nonpayment of premium or substantial increase in hazard; or

   **b.** Mailing or delivering at least 45 days' notice prior to the cancellation date for any other reason.

   Written notice of cancellation, including the reason for cancellation, will be mailed or delivered to the first Named Insured at the first Named Insured's last mailing address known to us.

If cancellation is for nonpayment of premium, written notice may be sent by certificate of mailing or certified mail. If cancellation is for any reason other than nonpayment of premium, written notice must be sent by certified mail.

3. Cancellation Of Policies In Effect For 60 Days Or More.

   If this Policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel this Policy only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** Fraud or material misrepresentation affecting this Policy or in the presentation of claims under this Policy;

   **c.** Violation of any provisions of this Policy; or

   **d.** Substantial increase in hazard, provided we have secured approval for the cancellation from the commissioner of insurance.

   If we cancel this Policy for one of the reasons specified in Paragraph **3.**, we will cancel only in the following manner:

   **a.** By giving at least 15 days' notice before the effective date of cancellation if we cancel for nonpayment of premium; or

IL 02 19 06 15 © Insurance Services Office, Inc., 2014 **Page 1 of 2**

**b.** By mailing or delivering at least 45 days' notice before the effective date of cancellation if we cancel for any other reason.

Written notice of cancellation, including the reason for cancellation, will be mailed or delivered to the first Named Insured at the first Named Insured's last mailing address known to us.

If cancellation is for nonpayment of premium, written notice may be sent by certificate of mailing or certified mail. If cancellation is for any reason other than nonpayment of premium, written notice must be sent by certified mail.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** Any **When We Do Not Renew** Condition is deleted.

The following conditions are added:

**1. When We Do Not Renew**

**a.** We may elect not to renew this Policy by mailing, by certified mail, or delivering written notice of nonrenewal to the first Named Insured's last mailing address known to us. We will mail or deliver this notice at least 45 days before the:

**(1)** Expiration of the Policy; or

**(2)** Anniversary date of this Policy if this Policy has been written for a term of more than one year.

**b.** This provision does not apply:

**(1)** If we have indicated a willingness to renew;

**(2)** In case of nonpayment of premium;

**(3)** If you do not pay any advance premium required by us for renewal; or

**(4)** If any property covered in this Policy is insured under any other insurance policy.

**2. Renewal**

**a.** If we:

**(1)** Elect to renew this Policy; and

**(2)** Have the necessary information to issue a renewal policy,

we will confirm in writing at least 45 days before it expires our intention to renew this Policy; and the premium at which this Policy will be renewed.

**b.** If we do not comply with the provisions of Paragraph **a.,** you will have renewal coverage. The renewal coverage will be at the rates:

**(1)** In effect under the expiring or expired policy; or

**(2)** In effect on the expiration date, that have been approved by the Commissioner,

whichever are lower.

This renewal coverage will be on a pro rata basis and will continue for 45 days after we confirm renewal coverage and premium. If you accept this renewal policy, this Paragraph **b.** does not apply.

COMMERCIAL GENERAL LIABILITY
Form 10-02-2052 (Ed. 12-09)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Scheduled Railroad: | Designated Job Site: |
|---|---|
| ALL RAILROADS | ALL LOCATIONS |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

**12.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

POLICY NUMBER: 54303184-04

**COMMERCIAL GENERAL LIABILITY**
**10-02-2492 (Ed. 7-15)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NOTICE OF AN OCCURRENCE – WORKERS' COMPENSATION-RELATED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Paragraph **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**:

If you report an injury to an "employee" to your workers' compensation carrier and if it is subsequently determined that the injury is one to which this insurance may apply, any failure to comply with the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** provision will be waived if you provide us with the required notice as soon as possible after you know, or should have known from the standpoint of a reasonable person, that this insurance may apply.

POLICY NUMBER: 54303184-04

COMMERCIAL GENERAL LIABILITY
10-02-2493 (Rev. 8-18)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WRAP-UP EXCLUSION WITH LIMITED EXCEPTIONS FOR YOUR WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **2. Exclusions**:

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at any location where a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are or were included as an insured.

1. This exclusion applies whether or not the consolidated (wrap-up) insurance program:

   a. Provides coverage identical to that provided by this Coverage Part;

   b. Has limits adequate to cover all claims; or

   c. Remains in effect.

2. This exclusion does not apply to "bodily injury" or "property damage" caused by "your work":

   a. That is performed at any location owned by or rented to you that is not within the project site or location of the consolidated (wrap up) insurance program and is not covered by such insurance program; or

   b. That is performed on a project covered by a consolidated (wrap up) insurance program after such program has terminated or expired.

**10-02-2493 (Rev. 08-18)**
MS- 261906 (8/18)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 1 of 1**

COMMERCIAL GENERAL LIABILITY
Form 10-02-1935 (Rev. 10-10)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES –
# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1.a.** of Section **I – Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

    **1. Insuring Agreement**

      **a.** We will pay damages that the insured becomes legally obligated to pay for "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance;** and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**B.** Paragraph **1.a.** of Section **I – Coverage B Personal And Advertising Injury Liability** is replaced by the following:

    **1. Insuring Agreement**

      **a.** We will pay damages that the insured becomes legally obligated to pay for "advertising injury" or "personal injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "advertising injury" or "personal injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance;** and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**C.** Paragraph **1. Asbestos, Silica or Similar Compounds, Including Mixed Dust** of **Section I Coverage Form Exclusions** is deleted and replaced by the following:

**1. Asbestos; Silica**

**a.** **(1)** This insurance does not apply to any damages, loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of "asbestos", including any combination of "asbestos" with any dust, fiber or particles.

**(2)** This insurance does not apply to any damages, loss, cost or expense arising, in whole or in part, out of any:

**(a)** Demand, order, request or regulatory or statutory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess; or

**(b)** Claim or proceeding by or on behalf of a governmental authority or others for any damages, loss, cost or expense because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing;

the effects of "asbestos", including any combination of "asbestos" with any dust, fiber or particles.

**b.** **(1)** This insurance does not apply to any damages, loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of "silica", including any combination of "silica" with any dust, fiber or particles.

**(2)** This insurance does not apply to any damages, loss, cost or expense arising, in whole or in part, out of any:

**(a)** Demand, order, request or regulatory or statutory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess; or

**(b)** Claim or proceeding by or on behalf of a governmental authority or others for any damages, loss, cost or expense because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing;

the effects of "silica", including any combination of "silica" with any dust, fiber or particles.

**D.** The following is added as Paragraph **e.** to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition (Paragraph **2.** of **Section IV – Commercial General Liability Conditions**):

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**e.** Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**E.** Paragraph **3.** of **Section IV – Commercial General Liability** Conditions is replaced by the following:

**3. Legal Action Against Us**

**a.** Except as provided in Paragraph **b.,** no person or organization has a right under this Coverage Part:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**b.** With respect to all claims under this policy, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

**(1)** Brings an action to declare the rights of the parties under the policy; and

**(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**F.** The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**G.** The definition of "loading or unloading" in the **Definitions** Section does not apply.

**H.** The definition of "mixed dust" in the **Definitions** Section is deleted.

COMMERCIAL GENERAL LIABILITY
Form 10-02-1934 (Ed. 3-10)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **b.** of the **Premium Audit** Condition **Section IV** is replaced by the following:

**PREMIUM AUDIT**

**b.** We may audit your books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards.  An audit to determine the final premium due or to be refunded will be completed within 180 days after the expiration date of the policy.  But the audit may be waived if the total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1500.

**B.** Except as provided in Paragraph **A.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

Includes copyrighted material of ISO Properties, Inc., with its permission.

POLICY NUMBER: 54303184-04

**COMMERCIAL GENERAL LIABILITY**
Form 10-02-1802 (Ed. 5-07)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Limit Of Insurance | | Each Employee Deductible | Premium |
|---|---|---|---|---|
| **Employee Benefits Programs** | $   1,000,000 | **each employee** | $           1,000 | $        Included |
| | $   1,000,000 | **aggregate** | | |
| **Retroactive Date:** | 08/01/2016 | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay damages that the insured becomes legally obligated to pay for any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    **b.** This insurance applies to damages only if:

      **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

      **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

      **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

    **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

      **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Benefits Due**

Payments which are required pursuant to an "employee benefit program".

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments – Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraph **2.** of the Supplementary Payments provision does not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

    **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

    **b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

  **1. Limits Of Insurance**

    **a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

      **(1)** Insureds;

      **(2)** "Claims" made or "suits" brought;

      **(3)** Persons or organizations making "claims" or bringing "suits";

      **(4)** Acts, errors or omissions; or

      **(5)** Benefits included in your "employee benefit program".

    **b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

    **c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

      **(1)** An act, error or omission; or

      **(2)** A series of related acts, errors or omissions

      negligently committed in the "administration" of your "employee benefit program".

      However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

  **2. Deductible**

    **a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

    **b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

    **c.** The terms of this insurance, including those with respect to:

      **(1)** Our right and duty to defend any "suits" seeking those damages; and

      **(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

    apply irrespective of the application of the deductible amount.

    **d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Commercial General Liability Conditions** are replaced by the following:

  **2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

    **a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

      **(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

        Includes copyrighted material of ISO Properties, Inc., with its permission        Form 10-02-1802 (Ed. 5-07)

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

**a.** This endorsement is canceled or not renewed; or

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The "employee benefit programs" insured;

**b.** Previous types and amounts of insurance;

**c.** Limits of insurance available under this endorsement for future payment of damages; and

**d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

H. For the purposes of the coverage provided by this endorsement, Definitions **7.** and **26.** in the **Definitions** Section are replaced by the following:

   7. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   26. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

       a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

       b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Includes copyrighted material of ISO Properties, Inc., with its permission

**Form 10-02-1802 (Ed. 5-07)**

POLICY NUMBER: 54303184-04          **FORM 10-02-1562 (Rev. 03-10)**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COMPLIANCE WITH APPLICABLE TRADE SANCTIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS

The following is added:

**Compliance With Applicable Trade Sanctions**

This insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit us from providing insurance.

POLICY NUMBER: **54303184-04**

**COMMERCIAL GENERAL LIABILITY**
**10-02-2494 (Ed. 7-15)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NOTICE OF CANCELLATION OR NON-RENEWAL TO SPECIFIED PERSONS OR ORGANIZATIONS

This endorsement modifies the following:

COMMON POLICY CONDITIONS

### SCHEDULE

**Name(s) and Address(es):**

**All Persons or Organizations as on file with us**

The following Condition is added:

**Notice Of Cancellation Or Non-Renewal To Specified Persons Or Organizations**

1.  If we cancel or non-renew this policy for any reason other than non-payment, we will deliver notice of the cancellation or non-renewal to any Person(s) or Organization(s) shown in the Schedule **Thirty(30)** days prior to the effective date of cancellation or non-renewal.

    2.  If we cancel this policy for non-payment, we will deliver notice of the cancellation to any Person(s) or Organization(s) shown in the Schedule **Ten(10)** days prior to the effective date of cancellation.

3.  If notice is mailed, proof of mailing will be sufficient proof of notice.

4.  Any failure by us to notify such person(s) or organization(s) will not invalidate such cancellation or non-renewal with respect to any other person(s) or organization(s).

POLICY NUMBER: 54303184-04

**COMMERCIAL GENERAL LIABILITY**
**Form 10-02-2516 (Ed. 7-15)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Limit Of Insurance | | Each Employee Deductible | Premium |
|---|---|---|---|---|
| **Employee Benefits Programs** | $   1,000,000     each employee | | $   1,000 | $     Included |
| | $   1,000,000     aggregate | | | |
| **Retroactive Date:** | 08/01/2016 | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay damages that the insured becomes legally obligated to pay for any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III – Limits Of Insurance**); and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    **b.** This insurance applies to damages only if:

        **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

        **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

        **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

    **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

        **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(2)** When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Benefits Due**

Payments which are required pursuant to an "employee benefit program".

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments — Coverages **A** and **B** are replaced by Supplementary Payments — Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraph **2.** of the Supplementary Payments provision does not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II — Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

Includes copyrighted material of ISO Properties, Inc., with its permission    Form 10-02-2516 (Ed. 7-15)

   **c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

   **b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

   **1. Limits Of Insurance**

   **a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

      **(1)** Insureds;

      **(2)** "Claims" made or "suits" brought;

      **(3)** Persons or organizations making "claims" or bringing "suits";

      **(4)** Acts, errors or omissions; or

      **(5)** Benefits included in your "employee benefit program".

   **b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

   **c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

      **(1)** An act, error or omission; or

      **(2)** A series of related acts, errors or omissions

     negligently committed in the "administration" of your "employee benefit program".

     However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

   **2. Deductible**

   **a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

   **b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

   **c.** The terms of this insurance, including those with respect to:

      **(1)** Our right and duty to defend any "suits" seeking those damages; and

      **(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

     apply irrespective of the application of the deductible amount.

   **d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Commercial General Liability Conditions** are replaced by the following:

   **2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

   **a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

      **(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

Includes copyrighted material of ISO Properties, Inc., with its permission

Form 10-02-2516 (Ed. 7-15)

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

### EXTENDED REPORTING PERIODS

**1.** We will provide one or more Extended Reporting Periods, as described below, if:

  **a.** This endorsement is cancelled or not renewed; or

  **b.** We renew or replace this endorsement with insurance that:

    **(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

    **(2)** Does not apply to any act, error or omission on a claims-made basis.

**2.** Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, Extended Reporting Periods may not be cancelled.

**3.** A Basic Extended Reporting Period is automatically provided without additional charge if this endorsement is cancelled or nonrenewed by either you or us for any reason. This Basic Extended Reporting Period starts with the end of the policy period and lasts for sixty (60) days.

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for the exhaustion of the amount of insurance applicable to such "claims".

**4.** The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

**5.** A Supplemental Extended Reporting Period Endorsement is available, but only for an additional charge. The supplemental period lasts for five years starting when the Basic Extended Reporting Period, set forth in Paragraph 3., ends.

**6.** You must give us a written request for the Supplemental Extended Reporting Period Endorsement within thirty (30) days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and any premium or deductible you owe us for coverage provided under this endorsement. Once in effect, the Supplemental Extended Reporting Period may not be cancelled.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

  **a.** The "employee benefit programs" insured;

  **b.** Previous types and amounts of insurance;

  **c.** Limit of Insurance available under this endorsement for future payment of damages; and

  **d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

**7.** The Supplemental Extended Reporting Period Endorsement applicable to this coverage shall set forth the terms, not inconsistent with this section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

**8.** The Supplemental Extended Reporting Period Endorsement will provide a Supplemental Extended Reporting Period Aggregate Limit Of Insurance described below, but only for "claims" first received and recorded during the Supplemental Extended Reporting Period. The Supplemental Extended Reporting Period will not extend the policy period.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

  **a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

  **b.** Handling records in connection with the "employee benefit program"; or

  **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

**4.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

    **a.** Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

    **b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

    **c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

    **d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

    **e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**H.** For the purposes of the coverage provided by this endorsement, Definitions **7.** and **26.** in the **Definitions** Section are replaced by the following:

    **7.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

    **26.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

        **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

        **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**COMMERCIAL GENERAL LIABILITY**
**10-02-2517 (Ed. 7-15)**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW HAMPSHIRE SUPPLEMENTAL
# EXTENDED REPORTING PERIOD ENDORSEMENT FOR
# EMPLOYEE BENEFITS LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

NEW HAMPSHIRE EMPLOYEE BENEFITS LIABILITY COVERAGE ENDORSEMENT

**A.** A Supplemental Extended Reporting Period Endorsement is provided, as described in New Hampshire Employee Benefits Liability Coverage Endorsement**.**

**B.** A Supplemental Extended Reporting Period Aggregate Limit applies, as set forth in Paragraph **D.**, to "claims" first received and recorded during the Supplemental Extended Reporting Period. This limit is equal to the Aggregate Limit, if any, shown in the Schedule of the Endorsement in effect at the end of the policy period.

**C.** The following is added as Paragraph **A.1.e.** of the New Hampshire Employee Benefits Liability Coverage endorsement:

> **e.** A "claim" first made within five years after the end of the Basic Extended Reporting Period will be deemed to have been made on the last day of the policy period, provided that the "claim" is for damages made by an "employee" because of any act, error or omission that occurred before the end of the policy period (but not before any applicable Retroactive Date).

**D.** Paragraph **D.1.b.** of the New Hampshire Employee Benefits Liability Coverage endorsement is replaced by the following:

> **b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".
>
> However, the Aggregate Limit does not apply to damages for "claims" first received and recorded during the Supplemental Extended Reporting Period.

The Supplemental Extended Reporting Period Aggregate Limit is the most we will pay for the sum of all damages because of acts, errors or omissions for "claims" first received and recorded during the Supplemental Extended Reporting Period.

**E.** The following is added to Subparagraph **4.b.(1)** of the **Other Insurance** Condition of Paragraph **E.** of the New Hampshire Employee Benefits Liability Coverage endorsement:

> **4. Other Insurance**
>
> **b. Excess Insurance**
>
> This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis when the policy period for said insurance begins or continues after the Supplemental Extended Reporting Period Endorsement takes effect.

**F.** This endorsement will not take effect unless you pay the additional premium for it when due, as set forth in New Hampshire Employee Benefits Liability Coverage Endorsement and any premium or deductible you owe us for coverage provided under this policy. If that premium is paid when due, this endorsement may not be cancelled.

POLICY NUMBER:**54303184-04**                    **COMMERCIAL GENERAL LIABILITY**
                                                 **10-02-2490 (Rev. 4-16)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In consideration of the premium charged, the following provisions apply to the insurance provided by this policy and supersede any provision(s) to the contrary.

**SCHEDULE**

You may select a Deductible amount on either a Per Claim or a Per Occurrence basis. Your selected Deductible applies to the Coverage option and to the basis of the Deductible indicated by an "X" in the Schedule. Unless otherwise indicated, each Deductible applies separately from and in addition to any other Deductible.

| Indicate Below with "X" | Coverage | Deductible | Per Occurrence | Per Claim |
|---|---|---|---|---|
| **X** | All Coverages | $1,000 | **X** | |
| | Bodily Injury Liability — Other than Products/Completed Operations | $ | | |
| | Bodily Injury Liability — Products/Completed Operations | $ | | |
| | Property Damage Liability — Other than Products/Completed Operations | $ | | |
| | Property Damage Liability — Products/Completed Operations | $ | | |
| | Bodily Injury Liability and Property Damage Liability — Other than Products/Completed Operations | $ | | |
| | Bodily Injury Liability and Property Damage Liability — Products/Completed Operations | $ | | |
| | Advertising Injury and Personal Injury | $ | | |
| | Damage to Premises Rented to You | $ | | |
| | Medical Expenses | $ | | |
| | Other: | $ | | |

**DEDUCTIBLE AGGREGATE**

| Deductible Aggregate | **N/A** | Per Project: | ☐ Yes | ☒ No |
|---|---|---|---|---|

**BASKET AGGREGATE CONTAINMENT AMOUNT**

| Amount | | **N/A** | Per Project: | ☐ Yes | ☒ No |
|---|---|---|---|---|---|
| Exposure Base | **N/A** | Exposure Estimate | **N/A** | Rate | 0 |
| Policy Number **N/A** | | | Line(s) of Insurance **N/A** | | |

**10-02-2490 (Rev. 4-16)**      Includes copyrighted material of Insurance Services Office, Inc.,      **Page 1 of 4**
                                with its permission.

**A.** Our obligation to pay damages, costs, expenses or medical expenses, subject to the applicable Limit Of Insurance as shown in the Declarations, will be reduced by the applicable Deductible shown in the Schedule above. Our Limit Of Insurance includes, and is not in addition to, such Deductible. The Limits Of Insurance will not be increased or reinstated regardless of the applicability of any Deductible or any amount that you must pay or reimburse in connection with your Deductible. You agree to remain wholly and solely liable for, and not insure elsewhere, your Deductible obligations. This Deductible cannot be satisfied by the payment of any other:

   **1.** Insurance or bond; or

   **2.** Type of deductible, self-insurance or other mechanism arranged for funding of loss;

that may also apply to our obligation to pay damages, costs, expenses or medical expenses.

**B.** The Deductible basis shown in the Schedule above applies as follows:

   **1. PER CLAIM BASIS.** If the Deductible amount shown in the Schedule above is on a Per Claim basis, that Deductible applies separately to the sum of amounts for damages or other indemnity under the applicable Coverage as shown in the Schedule in connection with loss allocable to each separate person or organization that arises out of each separate "occurrence" or offense as applicable.

   **2. PER OCCURRENCE BASIS.** If the Deductible amount shown in the Schedule above is on a Per Occurrence basis, that Deductible applies separately to the sum of amounts for damages or other indemnity under the applicable Coverage as shown in the Schedule in connection with loss that arises out of each separate "occurrence" or offense as applicable.

**C.** Subject to the applicable Limit Of Insurance and related policy provisions, we will pay for all damages, costs, expenses or medical expenses payable under this policy without reduction by the applicable Deductible when, as a result of the application of such Deductibles to damages, costs, expenses or medical expenses payable under the policy, the sum of all Deductibles paid by you exceeds the amount, if any, shown in the Schedule above as the Deductible Aggregate.

The Deductible Aggregate shown in the Schedule above is not subject to adjustment unless a basis of adjustment is shown below:

   **1.** The Deductible Aggregate is adjustable at a rate of   per ; however the minimum amount of the aggregate deductible will be no less than the Deductible Aggregate shown in the Schedule above.

   **2.** The adjustment basis is  and is estimated at the inception of the policy period to be in the amount of .

If this policy has more than one deductible applying to the same "occurrence" or claim, the maximum deductible that will apply under this policy shall not exceed the highest applicable deductible. In addition, the sum of all deductibles paid by you shall not exceed the highest applicable Deductible Aggregate under this policy.

If no Deductible Aggregate amount is shown in the Schedule above, then there is no aggregate limit applicable to your Deductible obligations, and you must promptly pay all amounts on the basis shown in the Schedule.

If any payments are made by us under this policy for damages or "allocated loss adjustment expenses", the Deductible(s) shown in this endorsement applies regardless of whether any other coverages issued by us or any other carrier also apply.

**D.** The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**Basket Aggregate Containment Amount**

The amount, if any, shown in the Schedule as the Basket Aggregate Containment Amount is the most you must pay or reimburse us for the sum of all payments within a deductible or loss limitation for any policy or line of insurance shown in the Schedule for each policy year, as defined in Paragraph **E.** of this endorsement, unless a Per Project basis is shown in the Schedule, in which case the actual Basket Aggregate Containment Amount will be determined at the end of the "project".

If an Exposure Base, Exposure Estimate and Rate are shown in the Schedule for the Basket Aggregate Containment Amount, then the Basket Aggregate Containment Amount is an estimated amount and is subject to audit by us.  In such case, the amount of the actual Basket Aggregate Containment Amount will be determined at the end of each policy year, as defined in Paragraph **E.** of this endorsement, by using such Rate and the actual amount of the Exposure, unless a Per Project basis is shown in the Schedule, in which case the actual Basket Aggregate Containment Amount will be determined at the end of the

"project". But the actual Basket Aggregate Containment Amount will not be less than the Basket Aggregate Containment Amount shown in the Schedule.

With respect to a self-insured retention applicable to any policy or line(s) of insurance shown in the Schedule, the amount of such retention actually applied will be credited in the determination of the Basket Aggregate Containment Amount.

**E.**  Unless otherwise indicated, Deductible amounts starting with the beginning of the policy period shown in the Declarations apply separately to each consecutive annual period and to any remaining period and to any extension period. If the policy period is longer than one year, any Deductible Aggregate or Basket Aggregate Containment Amount applies separately to each policy year unless a Per Project basis is shown in the Schedule. Each policy year begins on the inception or anniversary date of the policy and ends at the earlier of the next anniversary date or the expiration of the policy.

**F.**  You must reimburse us for "allocated loss adjustment expenses" incurred by us as part of the **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** in defending a claim or "suit" as indicated by one of the options below:

☑  "Allocated loss adjustment expenses" are included in the Deductible shown in the Schedule above. Your total reimbursement for damages, costs, expenses, medical payments and "allocated loss adjustment expenses" combined shall not exceed the Deductible shown in the Schedule above. However, the Limits Of Insurance will not be reduced by the amount of any "allocated loss adjustment expenses" unless such expenses are described as reducing the Limits Of Insurance of the applicable Coverage.

☐  "Allocated loss adjustment expenses" are payable in addition to the Deductible shown in the Schedule above on a shared basis. The portion of "allocated loss adjustment expenses" that you must pay will be calculated by dividing the smaller of the Deductible shown in the Schedule or the damages, costs, expenses, and medical payments we pay by the damages, costs, expenses, and medical payments we pay. If we pay no damages, costs, expenses, and medical payments, you must reimburse us for all "allocated loss adjustment expenses" up to the Deductible shown in the Schedule above and % (if no amount is shown, 50% will apply) of all remaining "allocated loss adjustment expenses". Your total reimbursement for damages, costs, expenses, medical payments and "allocated loss adjustment expenses" under this option may exceed the Deductible shown in the Schedule above.

☐  "Allocated loss adjustment expenses" are payable by us.  The Deductible applies to damages only.

Your obligation to reimburse us for "allocated loss adjustment expenses" applies separately to each "occurrence" or claim.

**G.**  When we pay all or any part of any Deductible shown in the Schedule above, you must promptly reimburse us for:

**1.**  The Deductible or the part of the Deductible paid by us; and

**2.**  All "allocated loss adjustment expenses "incurred by us in defending a claim or "suit" according to the option selected in Paragraph **F.** of this endorsement.

If we require collateral or other security to secure the Deductible and other obligations under this endorsement, you shall provide such collateral or other security in an amount and form as we may determine. Upon notification of payment by us, you will promptly reimburse us for any such amounts that we have paid. We may apply any working fund deposit and any security interest to your obligations relative to this endorsement.

We may review at any time any working fund deposit and any security interest relative to this endorsement. If we determine that an increase in any working fund deposit or security interest is required, then you must promptly provide such increase to us.

If you fail to comply with any of the provisions of this Paragraph **G.**, then we may liquidate any working fund deposit or security interest and take ownership of the proceeds to the extent of any and all debts to us. The surplus of such proceeds in excess of such debts will remain in our possession as security interest until the termination of all reimbursement obligations, as determined by us.

The first Named Insured shown in the Declarations agrees, and is authorized, to promptly reimburse us for any and all reimbursable amounts. Unless otherwise indicated, each named insured is jointly and severally liable for any and all such amounts. If you fail to reimburse us, or fail to provide us with any security or collateral in an amount or form as we may require, we may cancel this policy in accordance with the

cancellation conditions, including any state amendatory endorsements, and any applicable state cancellation laws or regulations. Any resulting return premium may be applied to the reimbursement amounts due.

We may mutually agree upon a final payment amount to satisfy your present and future payment obligations under this endorsement. Payment by you of such amount will end your obligations to make payments to us under this endorsement.

**H.** The Aggregate Deductible or Basket Aggregate Containment Amount, as applicable, will not be reduced if this policy is cancelled before the end of the policy period or "project", as applicable:

**1.** By you for any reason; or

**2.** By us for the following reasons:

    **a.** Nonpayment of premium;

    **b.** Material misstatement;

    **c.** Material failure to comply with underwriting requirements;

    **d.** Substantial change in the risk insured;

    **e.** Failure to reimburse us for deductible obligations; or

    **f.** Material breach of contract.

If we cancel the policy for any other reason, the aggregate will be reduced by the prorata portion of the amount equal to the time remaining in the policy period or "project", as applicable.

**I.** As used herein, the following is added to **SECTION V – DEFINITIONS**:

"Allocated loss adjustment expenses" means costs associated with the investigation or settlement of any claim or "suit" against an insured which can be directly allocated to a particular claim. This includes, but is not limited to defense costs, attorney's fees, premiums for appeal and bail bonds, prejudgment and post judgment interest, expenses incurred by us, first aid expenses, medical cost containment expenses, and reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or "suit". "Allocated loss adjustment expenses" do not include the salaries of our "employees" who are involved in the investigation, administration, adjustment and settlement of claims or of any of our other general operating expenses that cannot be allocated to a particular claim.

**J.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages;

**2.** Your duties in the event of an "occurrence", claim, or "suit";and

**3.** Our rights to recovery against others;

apply irrespective of the application of the Deductible amount. Any amount recovered will be apportioned as follows:

**a.** First, we shall receive all amounts recovered until we have been fully reimbursed for all amounts we have paid or incurred (including costs or expenses of such recovery proceedings) in connection with amounts that exceed any Deductible; and

**b.** Then, remaining amounts recovered will be applied to reimburse you and us, in accordance with the respective interests in connection with amounts within any Deductible (including costs or expenses of such recovery proceedings).

POLICY NUMBER: 54303184-04                    **COMMERCIAL GENERAL LIABILITY**
                                              **10-02-2450 (Ed. 7-15)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UNINTENTIONAL ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

Any unintentional error or omission in the description of, or failure to completely describe, any premises or operations intended to be insured by this Coverage Part will not invalidate or affect insurance for those premises or operations. However, you must report such error, omission or failure to us as soon as practicable after its discovery.

POLICY NUMBER: 54303184-04          **COMMERCIAL GENERAL LIABILITY**
**10-02-2451 (Ed. 7-15)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# KNOWLEDGE AND NOTICE OF AN OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Paragraph **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**:

Knowledge of an "occurrence" or offense:

**(1)** By the agent or "employee" of any insured shall not in itself constitute knowledge by the insured unless the person(s) holding the following position(s) or his/her designee shall have received such notice from the agent or "employee":

    **(a)** Project Manager (unless otherwise specified below)

    **(b)** [*on master wrap up policies only, insert Name and Address of Sponsor's Designee*]; or

**(2)** By one or more insureds shall not constitute knowledge of such "occurrence" or offense by you, and notice of any "occurrence" or offense given to us or any of our authorized agents by one insured shall constitute such notice by all insureds.

Failure of an agent or "employee" of the insured, other than the designee scheduled in item **(1)** above, to notify us of an "occurrence" or offense that such person knows about will not affect the insurance afforded to you.

For purposes of this endorsement, Project Manager means the individual you designate who exercises chief supervisory or administrative authority at the "project site".

POLICY NUMBER: **54303184-04**

**COMMERCIAL GENERAL LIABILITY**
**10-02-2454 (Ed. 7-15)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BROAD FORM NAMED INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The Named Insured in the Declarations is revised to include the following:

A subsidiary organization of the first Named Insured shown in the Declarations is a Named Insured if, at the beginning of the policy period and at the time of loss, the first Named Insured, either directly or indirectly:

1. Controls more than 50 percent of the interests entitled to vote generally in the election of the governing body of such organization; or

2. Exercises management control or financial control as evidenced in a written contract or agreement;

provided that their operations have been declared to us prior to the inception date of this policy.

**10-02-2454 (Ed. 7-15)**      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      **Page 1 of 1**

POLICY NUMBER: 54303184-04

**COMMERCIAL GENERAL LIABILITY**
**10-02-2463 (Rev. 8-18)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ANTI-STACKING

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK DEPARTMENT OF
TRANSPORTATION COVERAGE FORM

The following is added to the **Other Insurance** condition of **SECTION IV – CONDITIONS**:

**Anti-Stacking**

If this coverage form and any other coverage form or policy that is issued by us or any of our affiliated companies where you:

1.  Are a Named Insured; or

2.  Are a contractor designated on an owners and contractors protective liability policy, or a special protective and highway liability policy, as applicable;

applies to the same claim or "suit", the maximum limit of insurance under all of the coverage forms or policies will not exceed the highest applicable limit of insurance available under any one coverage form or policy. This condition does not apply to any other coverage form or policy issued by us or any of our affiliated companies specifically to apply as excess insurance over this policy.

© Insurance Services Office, Inc., 2013

POLICY NUMBER: 54303184-04

**COMMERCIAL GENERAL LIABILITY**
**10-02-2484 (Ed. 7-15)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXTENSION OF PERSONAL AND ADVERTISING INJURY COVERAGE – DELETION OF CONTRACTS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **2.Exclusions**, Exclusion **e. Contracts** is deleted.

**10-02-2484 (Ed. 7-15)**     Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

**Page 1 of 1**

POLICY NUMBER: 54303184-04        **COMMERCIAL GENERAL LIABILITY**
**10-02-2472 (Ed. 7-15)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT- PRIOR OCCURRENCES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **1. Insuring Agreement** of SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY is replaced by the following:

**1. Insuring Agreement**

a. We will pay damages that the insured becomes legally obligated to pay for "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" first occurs during the policy period, regardless of when such "occurrence" giving rise to "bodily injury" or "property damage" takes place.

c. All "bodily injury" or "property damage" caused by or arising out of an "occurrence" is deemed to first occur at the earliest of when:

(1) Any "bodily injury" or "property damage" first becomes known, or should have been known from the standpoint of a reasonable person, to anyone;

(2) It is alleged that any "bodily injury" or "property damage" first manifests;

(3) Written or verbal notification of the alleged existence of a potential or actual claim for any "bodily injury" or "property damage" is received by any insured, its "employees", agents, parent or subsidiary organizations, directors, managers, members, officers, partners, subcontractors or representatives;

(4) Any insured, its "employees", agents, parent or subsidiary organizations, directors, managers, members, officers, partners, or representatives knew, or should have known from the standpoint of a reasonable person, that any "bodily injury" or "property damage" has occurred; or

(5) Any "bodily injury" or "property damage" actually began regardless of whether the "bodily injury" or "property damage" results in additional related or unrelated claims, is continuous, progressive, repeated, changing or results from exposure to substantially the same general harm.

d. Damages for "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

POLICY NUMBER: 54303184-04

COMMERCIAL GENERAL LIABILITY
10-02-2464 (Ed. 7-15)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NONOWNED WATERCRAFT EXTENSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**I.**   The following replaces **SECTION I – COVERAGES**, **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **2. Exclusions**, Exclusion **g. Aircraft, Auto Or Watercraft**, item **(2)**:

**(2)** A watercraft you do not own that is:

   **(a)** Less than **52**  feet long; and

   **(b)** Not being used to carry persons or property for a charge.

   However, this exception does not apply to watercraft you do not own that is used in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity;

**II.**   The following is added to **SECTION II – WHO IS AN INSURED**:

No person is an insured with respect to any watercraft owned in whole or in part by such person or by a member of his or her household.

**10-02-2464 (Ed. 7-15)**     Includes copyrighted material of Insurance Services Office, Inc.,          **Page 1 of 1**
with its permission.

Date Filed 5/11/2022 1:30 PM
Superior Court - Suffolk
Docket Number

# Exhibit C

*Michienzie & Sawin LLC*

**Paul Michienzie**

*745 Boylston Street
Boston, Massachusetts
02116-2636*

*Telephone
617-227-5660*

January 17, 2022

*Facsimile
617-227-5882*

*Email
pmichienzie@masatlaw.com*

## Via First Class Mail and Email (dzchen@chubb.com):

Mr. Dennis Chen
Senior Claim Director, Casualty Claims, Mid-Atlantic Region
333 Earle Ovington Boulevard, Suite 210
Uniondale, New York  11553

## Via First Class Mail:

Alissa Weiss, President
HUB Foundation Co., Inc.
139 Billerica Road
Chelmsford, MA  01824

| | |
|---|---|
| **Re:** | **Joseph Morog vs GLX Constructors et, al** |
| **Venue:** | **Massachusetts Superior Court, Middlesex County** |
| **Chubb Insured:** | **HUB Foundation Co., Inc.** |
| **Date of Accident:** | **July 28, 2020** |
| **Chubb Reference:** | **068521004632** |
| **GB #:** | **006537-022105-GB-01** |
| **Writing Co:** | **Executive Risk Indemnity, Inc.** |

Dear Mr. Chen, and Ms. Weiss:

Please be advised that our office represents Keller North America, Inc. ("Keller") with regard to the above-referenced matter. This letter will respond to Mr. Chen's 11/18/2021 letter (the "Tender Denial Letter") to Keller, denying Keller's request for defense and indemnification under the Joint Venture Agreement (the "JVA") between HUB Foundation ("HUB,") Hayward Baker, Inc. ("HBI,") and Case Foundation, Inc. ("Case").

{00469087.DOCX}

# MICHIENZIE & SAWIN LLC

Mr. Dennis Chen
Alissa Weiss, President
January 17, 2022
Page 2

We respectfully submit that the Tender Denial Letter does not adequately address certain relevant language in the JVA, and, as a result, reaches the wrong conclusion. We would ask that you consider the following facts and arguments, and reassess your position accordingly. This letter will serve as a further demand that Chubb and HUB defend and indemnify HBI and GLX Contractors, including its affiliated entities named in the lawsuit (collectively, "GLX").

## Contractual Indemnification

### 1.  The JVA requires HUB to defend and indemnify HBI and GLX

Under the JVA, there are two separate and independent triggers for HUB's duty to indemnify and defend HBI and GLX. The first is the explicit indemnification language set forth in Sections 1.2 ("Each Party shall indemnify the other for that Party's losses caused by their own sole fault, recklessness and/or willfully negligent act,") and 9.2 ("the Party responsible shall be liable to, and in addition shall indemnify and hold harmless the other Party from and against any and all claims, demands, actions, and causes of action which shall or may arise by virtue of anything done or omitted to be done by the Party Responsible…). Here, the factual allegations in the lawsuit against GLX clearly identify HUB as the legally responsible party. Mr. Morog was a HUB employee, using HUB equipment, and at the time of the alleged injury, was in the course of performing work under HUB's sole supervision and direction. These facts, none of which can be reasonably disputed, make HUB responsible for indemnifying HBI and GLX. Moreover, HBI is obligated under its agreement with GLX to indemnify GLX, and therefore HUB's indemnification of HBI includes the duty to defend GLX.

The Tender Denial Letter does not substantively dispute the scope of HUB's indemnification obligations to HBI and GLX, but rather characterizes the request as premature, since there has not yet been a legal finding of HUB's liability. This position misses the mark, because there is nothing in the JVA that even implies, much less requires, that the liability of the Responsible Party must be reduced to judgment to trigger the duty to indemnify the other. Indeed, in a scenario like this, where the Responsible Party's indemnification obligation includes the duty to defend a third party, reading a non-existent final judgment requirement into the JVA defeats the essential purpose of the indemnification language.

### 2.  The JVA makes HUB joint and severally liable for HBI's obligations to GLX.

Even if Keller's demand for indemnification were premature, as argued in the Tender Denial Letter, HUB is nevertheless responsible for indemnifying and defending GLX, and for its proportionate share of HBI's defense costs, under the joint and several liability provisions of the JVA. Specifically, Section 1.2 of the JVA provides that "**[t]he obligations and liabilities of the**

# MICHIENZIE & SAWIN LLC

Mr. Dennis Chen
Alissa Weiss, President
January 17, 2022
Page 3

**Parties under the Project Contract shall be joint and several**". Likewise, Section 9.1(a) of the JVA provides that "**in the event of any liabilities or deficiencies arising out of or resulting from the submission of the Joint Proposal or the performance of the Project Contract or this Agreement … each Party hereto shall assume and pay its Proportionate Share of such liabilities or deficiencies.**" In other words, any obligations of HBI under its contract with GLX are also HUB's obligations, and HBI is entitled to contribution from HUB. Since Section 28.1 of the agreement between HBI and GLX requires HBI to defend and indemnify GLX, this means that HUB is required to contribute its pro rata share of the cost of defending and indemnifying GLX, as well as any costs and liabilities incurred by HBI directly in connection with the lawsuit.

Significantly, the "joint and several" provisions of the JVA are no fault, in that they do not require that HUB be deemed a "Responsible Party" or otherwise legally liable for Mr. Morog's injuries. Accordingly, there is no basis to claim that the HBI demand for contribution is premature or otherwise contingent on HUB's liability for Mr. Morog's injuries.

## Insurance Coverage

As detailed above, HUB obligations under the JVA are twofold, requiring it to defend and indemnify HBI and GLX under (a) the indemnification provisions of Sections 1.2 and 9.2, and (b) the provisions in Sections 1.2 and 9.1 making HUB joint and several liability for the obligations of HBI, which include defense and indemnity of GLX.

This affects the insurance coverage analysis in two ways. First, it means that the JVA Agreement constitutes an "insured contract," such that HUB's assumed obligations of HBI and GLX are insured costs and liabilities for which it is entitled to coverage under the policy. That is true whether or not Keller, HBI and/or GLX are named insureds or additional insureds, and therefore the grounds for denial of coverage cited in the Tender Denial Letter are inapposite.

Second, it means that HUB was and is required to provide insurance to cover its assumed obligations to HBI and GLC, whether by naming them as additional insureds, or otherwise, to comply with the requirement of Section 17.1 of the JVA. Section 17.1 requires HUB to "carry adequate public liability and property damage and worker's Compensation insurance…". Insurance that would not cover HBI and GLX for HUB's contractually assumed obligations to those entities is clearly not "adequate," under any reasonable interpretation. Thus, the statement in the Tender Denial Letter that "there is no requirement in the JV agreement requiring Hub to provide insurance for Keller, Hayward Baker and/or GLX naming them as additional insureds" is not accurate.

{00469087.DOCX}

# MICHIENZIE & SAWIN LLC

Mr. Dennis Chen
Alissa Weiss, President
January 17, 2022
Page 4

     Based on the foregoing, we ask that you reconsider your denial of Keller's tender and immediately assume defense and indemnification of HBI and GLX in the ongoing litigation, under the indemnification provisions of the JVA.

     Please feel free to contact us anytime if you wish to discuss this matter.

Very truly yours,

Paul Michienzie

PM/jc
3925.410

{00469087.DOCX}

# Exhibit D

# Benesch

Richard D. Kalson
41 South High Street, Suite 2600
Columbus, Ohio 43215-6164
Direct Dial:  614.223.9380
Fax:  614.223.9330
rkalson@beneschlaw.com

February 17, 2022

**Via Email, Certified Mail, and Regular U.S. Mail**
Mr. Dennis Chen
Senior Claim Director, Casualty Claims, Mid-Atlantic Region
333 Earle Ovington Boulevard, Suite 210
Uniondale, New York 11553
dzchen@chubb.com

Re:    **Joseph Morog v. GLX Constructors, et al.**

| | |
|---|---|
| Venue: | Massachusetts Superior Court, Middlesex County |
| Chubb Insured: | HUB Foundation Co., Inc. |
| Date of Accident: | July 28, 2020 |
| Chubb Reference: | 068521004632 |
| GB #: | 006537-022105-GB-01 |
| Writing Co.: | Executive Risk Indemnity, Inc. |

Dear Mr. Chen:

Please be informed that this law firm represents HUB Foundation Co., Inc. ("HUB") in connection with its response to Keller North America, Inc's ("Keller") request for defense and indemnification under the Joint Venture Agreement (the "JVA") between HUB, Hayward Baker, Inc. ("HBI"), and Case Foundation, Inc. ("Case"). HUB has reviewed Keller's request for defense and indemnification as well as Chubb's November 18, 2021 denial of that request (the "Tender Denial Letter"). After review of those documents, as well as the underlying JVA and applicable insurance policies, HUB has assessed its position and hereby demands that Chubb work with HUB to defend and indemnify HBI and GLX Contractors (as well as its affiliated entities named in this dispute) (collectively, "GLX") in the above-referenced lawsuit.

The JVA contains a clear condition under which HUB's duty to indemnify and defend HBI and GLX are triggered. This can be found in Section 1.2, which states in relevant part that "[e]ach Party shall indemnify the other for that Party's losses caused by their own sole fault, recklessness and/or willfully negligent act." Here, the assertions in the above-referenced lawsuit against GLX identify HUB as a party alleged to be liable to Mr. Morog. The lawsuit alleges that Mr. Morog was a HUB employee, using HUB equipment, and at the time of the alleged injury was in the course of performing work under HUB's supervision and discretion. While certain of these allegations amount to legal conclusions that are subject to discovery and additional litigation, it is clear that a number of the allegations in the lawsuit are directed against HUB.

Date Filed 5/11/2022 1:30 PM
Superior Court - Suffolk
Docket Number

Mr. Dennis Chen
February 17, 2022
Page 2

Keller has stated that the fact that the lawsuit is still in the early stages does not mean that its request for indemnification is premature. After analyzing Keller's response to the Tender Denial Letter, HUB agrees with Keller's position that it is required to indemnify Keller under these circumstances. Additionally, HUB agrees with Keller's position that the fact that there has not yet been a finding of liability does not preclude a request for indemnity. Simply put, the JVA critically does not contain language requiring that liability must be established prior to indemnification. Rather, since HUB's indemnification obligation includes the duty to defend a third party, reading a final judgment requirement into the JVA where there is none would defeat the essential purpose of the indemnification language in Section 1.2. As you know, the costs involved in defending against a lawsuit of this nature are considerable. For that reason, as well as the others stated in this letter, requiring a finding of liability as a condition precedent to indemnification would render a considerable portion of the indemnity provision to be mere surplusage. This interpretation is not supported under the plain language of the JVA.

Additionally, the JVA makes HUB jointly and severally liable for HBI's obligations to GLX. Even if Keller's request for indemnification were premature, and it is not, HUB is responsible for indemnifying and defending GLX as well as for its proportionate share of HBI's defense costs, under the joint and several liability provisions of the JVA. Specifically, Section 1.2 of the JVA provides that "[t]he obligations and liabilities of the Parties under the Project Contract shall be joint and several." Likewise, Section 9.1(a) of the JVA provides that "in the event of any liabilities or deficiencies arising out of or resulting from the submission of the Joint Proposal or the performance of the Project Contract or this Agreement … each Party hereto shall assume and pay its Proportionate Share of such liabilities or deficiencies." In other words, any obligations of HBI under its contract with GLX are also HUB's obligations and HBI is entitled to contribution from HUB. Since, as Keller has stated, Section 28.1 of the agreement between HBI and GLX requires HBI to defend and indemnify GLX, this means that HUB is required to contribute its pro rata share of the cost of defending and indemnifying GLX. This reasoning further applies to any costs and liabilities incurred by HBI directly in connection with the lawsuit.

Significantly, the "joint and several" provisions of the JVA do not require that HUB be deemed legally liable for Mr. Morog's injuries. Accordingly, there is no basis to claim that the HBI demand for contribution is premature or otherwise contingent on any finding as to HUB 's liability for Mr. Morog's injuries. As detailed above, HUB's obligations under the JVA are twofold, requiring it to defend and indemnify HBI and GLX under (a) the indemnification provision of Section 1.2, and (b) the provisions in Sections 1.2 and 9.1 making HUB jointly and severally liable for the obligations of HBI. This includes the defense and indemnity of GLX. The aforementioned combination of these two contractual requirements affects the insurance coverage analysis in a very important way. Specifically, it means that the JVA constitutes an "insured contract" under HUB's Commercial General Liability Insurance Policy with Chubb such that HUB's assumed obligations of HBI and GLX are insured costs and liabilities for which it is entitled to coverage under that policy. This coverage exists regardless of whether Keller, HBI, and/or GLX are named insureds or additional insureds on that policy.

Mr. Dennis Chen
February 17, 2022
Page 3


     For the above reasons, HUB demands that Chubb immediately work with HUB to defend and indemnify HBI and GLX in connection with the above-referenced lawsuit. I look forward to receiving your prompt confirmation that this will take place.

     Very truly yours,

     BENESCH, FRIEDLANDER,
      COPLAN & ARONOFF LLP

     Richard D. Kalson

RDK:dmh

Encl.

cc: Hub Foundation (via email)
    Keller North America, Inc. c/o Paul Michienzie, Esq. (via email)

15401135 v2

# Exhibit E

RUBIN and
RUDMAN LLP
Attorneys at Law

53 STATE STREET | BOSTON, MA 02109 | P:617-330-7000
600 UNICORN PARK DRIVE | WOBURN, MA 01801 | P:781-933-5505

John J. McGivney
Direct Dial: 617-330-7017
E-mail: JMcGivney@rubinrudman.com
Return Address: Boston

March 1, 2022

*Via Email and Certified Mail Return Receipt Requested*

Richard D. Kalson, Esq.
Benesch, Friedlander, Coplan & Aronoff LLP
401 South High Street, Suite 2600
Columbus, Ohio 43215-6164
rkalson@beneschlaw.com

Re:    Insured:            Hub Foundation Co., Inc.
       Date of Loss:       July 28, 2020
       Claim No.:          068521004632
       Underwriting Co.:   Executive Risk Indemnity, Inc.
       Policy No.:         54303184-03
       Policy Period:      08/01/2019 to 08/01/2020
       Civil Action:       *Joseph Morog v. GLX Constructors, et al.*, Middlesex
                           Superior Court, Civil Action No. 2181-CV-00438

Dear Mr. Kalson:

Executive Risk Indemnity, Inc. ("Executive Risk") acknowledges receipt of your correspondence dated February 17, 2022 directed to Dennis Chen, Senior Claim Director at Chubb North America regarding the above-referenced claim. Executive Risk has retained this firm as its outside coverage counsel to assist in evaluating the availability of coverage for Hub Foundation Co., Inc. ("Hub"), Hayward Baker, Inc. ("HBI"), Case Foundation, Inc. ("Case"), and GLX Constructors, the joint venture consortium comprised of Fluor Enterprises, Inc., the Middlesex Corporation, Herzog Contracting Corp., and Balfour Beatty Infrastructure, Inc., ("GLXC") for the Civil Action under the above-referenced policy number 54303184-03 issued by Executive Risk to Hub (the "Policy").

Executive Risk has authorized this firm to respond to your letter of February 17, 2022 and to provide you with this supplemental explanation of its coverage position. This correspondence will supplement any prior communications to Hub, HBI, Case and/or GLXC regarding Executive Risk's coverage position in this matter, including without limitation, the letter from Mr. Chen to Keller North America, Inc. ("Keller") dated November 18, 2021.

3079146_1

Richard D. Kalson, Esq.
March 1, 2022
Page 2

For the following reasons and based upon its thorough review of the Complaint and the Third Party Complaint filed in the Civil Action, your letter, and all of the information provided to it to date, Executive Risk stands by its determination that the Policy does not afford coverage for the claims asserted in the Civil Action or for any defense or indemnification owed by Hub to HBI, Case, or GLXC with respect to the Civil Action.

- **Hub is not an insured under the Policy with respect to the claims asserted in the Civil Action, and therefore, any defense or indemnification obligation owed by Hub to HBI, Case, or GLXC is not covered by the Policy.**

Hub is not an insured with respect to the Civil Action. Under Section II – Who Is An Insured, the Policy states: "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations" (the "Joint Venture Limitation").

The Civil Action arises out of Hub's conduct of a joint venture that is not a named insured under the Policy. In the Civil Action, the plaintiff, Joseph Morog, seeks damages for injuries he allegedly sustained on July 28, 2020, when, as an employee of Hub performing drilling and foundation work on the MBTA extension of the Green Line in Somerville and Medford, Massachusetts (the "GLXC Project"), he allegedly was injured while assisting in the use of a Kelly Bar extension and a 48" auger. Hub, according to your letter and the undisputed facts, was present at the GLXC Project performing the work in question pursuant to the Joint Venture Agreement among Hub, HBI, and Case. As demonstrated by your letter of February 17, 2022 and the agreement itself, Hub's obligations with respect to the GLXC Project, and its reason for being there on the date in question, were solely because of that Joint Venture Agreement.

The joint venture among Hub, HBI, and Case is not a named insured on the Policy. Therefore, Hub is not an insured under the Policy with respect to the Civil Action, as it arises out of Hub's conduct of that uninsured joint venture. Because Hub is not an insured under the Policy with respect to the claims asserted in the Civil Action, any defense or indemnification obligation owed by Hub to HBI, Case, or GLXC is not covered by the Policy.

Your letter of February 17, 2022 asserts that "the JVA [i.e., Joint Venture Agreement] constitutes an 'insured contract' under HUB's Commercial General Liability Insurance Policy with Chubb such that HUB's assumed obligations of HBI and GLX are insured costs and liabilities for which it is entitled to coverage under that policy." February 17, 2022 letter at 2. This assertion is without merit. As your letter of February 17, 2022 demonstrates, any defense and indemnification obligations on the part of Hub, if they existed, would arise pursuant to the terms of the Joint Venture Agreement. Specifically, your letter points to Sections 1.2 and 9.1 of the Joint Venture Agreement as imposing such purported obligations on the part of Hub to

Richard D. Kalson, Esq.
March 1, 2022
Page 3

defend and indemnify HBI and GLXC.[1]  Because any defense and indemnification obligations
on the part of Hub, if they existed, would be imposed upon Hub with respect to its conduct of the
joint venture created by the Joint Venture Agreement (which is not a named insured under the
Policy), Hub is not an insured under the Policy with respect to any liability for such purported
defense and indemnification obligations owed by it to HBI, Case, and/or GLXC, pursuant to the
Joint Venture Limitation.  In sum, any defense or indemnification obligation allegedly owed by
Hub under the Joint Venture Agreement – whether allegedly owed directly by Hub to HBI, Case,
and GLXC or allegedly owed by Hub to GLXC as a result of its purported joint and several
obligations under that agreement – is not covered by the Policy as an "insured contract" or
otherwise.

- **HBI, Case, and GLXC are not additional insureds under the Policy with respect to
  the Civil Action.**

    Notably, your letter of February 17, 2022 does not make any assertion or claim that HBI,
Case and/or GLXC are additional insureds under the Policy with respect to the Civil Action.  As
we are sure you are aware, Keller has made such an assertion on behalf of HBI and GLXC.  As
explained in our letter to Keller dated March 1, 2022, on which you were copied and which is
incorporated herein by reference, because, among other reasons, Hub is not an insured under the
Policy with respect to the Civil Action, HBI, Case, and GLXC cannot be additional insureds
under the Policy with respect to the Civil Action.  Given that your letter of February 17, 2022
does not assert additional insured status for HBI, Case, or GLXC under the Policy, the
explanation as to why none of those entities are additional insureds under the Policy will not be
restated here.

## Conclusion

    In conclusion, for the reasons explained above and in Executive Risk's earlier
correspondence, Executive Risk maintains that the Policy does not afford coverage for the claims
asserted in the Civil Action or for any defense or indemnification owed by Hub to HBI, Case, or
GLXC with respect to the Civil Action.  The Joint Venture Limitation precludes coverage for
Hub for the Civil Action because the Civil Action – and any purported obligation of Hub to
defend or indemnify HBI, Case, and GLXC with respect to it – arise out of Hub's conduct of a
joint venture that is not a named insured under the Policy.  Because Hub is not an insured under
the Policy with respect to the Civil Action , any defense or indemnification obligation owed by
Hub to HBI, Case, or GLXC with respect to the Civil Action is not covered by the Policy, either
as an "insured contract" or otherwise.

    If, after reviewing this letter, your client would like Executive Risk to further consider
any of the statements in your letter of February 17, 2022 or any other information, it requests that

---

[1] Executive Risk reserves all rights regarding the actual existence of the alleged defense and indemnification
obligations of Hub.  However, because there is no coverage for those obligations, even if they existed, the above
analysis assumes, for the sake of argument only, that such obligations exist.

Richard D. Kalson, Esq.
March 1, 2022
Page 4

you promptly provide Executive Risk with any evidence you believe may affect Executive
Risk's coverage determination.

      The analysis of coverage outlined herein is not meant to be exhaustive.  Executive Risk
does not waive, and specifically reserves, any rights under the Policy and/or applicable law.  The
foregoing is not intended, and should not be construed, as a waiver, modification, or alteration of
any of the terms, conditions, limitations, endorsements, or exclusions of the Policy.  Executive
Risk does not waive, and shall not be estopped from asserting, any defenses available under the
Policy and/or at law.  Executive Risk expressly retains the ability to disclaim coverage in the
future on any other grounds.

      Very truly yours,
      RUBIN and RUDMAN LLP, by:

      John J. McGivney
      Kara A. Loridas