UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HUB FOUNDATION CO., INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 22-11034-LTS |
| | ) |
| EXECUTIVE RISK INDEMNITY, INC., | ) |
| | ) |
| Defendant. | ) |

ORDER ON DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS (DOC. NO. 16) AND
PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 28)

September 21, 2023

SOROKIN, J.

This case presents an insurance policy dispute concerning coverage of a personal-injury lawsuit pending in state court. Plaintiff Hub Foundation Corporation, Inc. ("Hub") is a construction company that performed work on the MBTA extension of the Green Line through Somerville and Medford, Massachusetts ("the MBTA Project"). Hub held a commercial general liability insurance policy issued by Defendant Executive Risk Indemnity, Inc. ("Executive Risk") at the time that one of Hub's employees was injured at an MBTA Project construction site. Doc. No. 31 ¶¶ 8, 12.[1] In the present suit, Hub has sued Executive Risk seeking defense and indemnification on behalf of itself as the named insured, and other parties as alleged "additional insureds," in a pending underlying state court case involving the injured Hub employee.

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing system, and pincites are to the page numbers in the ECF header.

Executive Risk now moves this Court for judgment on the pleadings, seeking a judgment that the policy issued by Executive Risk to Hub does not cover Hub or any other party for the underlying state court lawsuit, and therefore Executive Risk has no duty to defend or indemnify them. Doc. No. 16. Hub opposes and cross-moves for partial summary judgment on the issue of whether the Executive Risk policy obliges Executive Risk to defend Hub and additional insureds (GLX and HBI) in the underlying lawsuit. Doc. No. 28. For the reasons explained below, the Court DENIES Executive Risk's Motion for Judgment on the Pleadings and ALLOWS Hub's Cross-Motion for Partial Summary Judgment.

I.    BACKGROUND

GLX Constructors ("GLX"), the general contractor on the MBTA Project, subcontracted with Hayward Baker, Inc. ("HBI") (the "HBI Subcontract") for work including deep foundation work. Doc. No. 31 ¶ 2. HBI in turn formed a "Joint Venture Agreement" between HBI, Hub, and Case Foundation, Inc. ("Case") to perform the work required by the HBI Subcontract. Id. ¶ 3; Doc. No. 3-1. The Joint Venture Agreement provides:

> HBI shall be the party under whose name the Project Contract is executed. The obligations and liabilities of the Parties under the Project Contract shall be joint and several.
>
>    *  *  *
>
> Each Party shall indemnify the other for that Party's losses caused by their own sole fault, recklessness, and/or willfully negligent act.
>
>    *  *  *
>
> In the event of any liabilities or deficiencies arising out of or resulting from anything done or omitted to be done by one Party outside of the scope of or in material breach of the terms of this Agreement, (such Party herein called the "Party Responsible"), the Party Responsible shall assume and pay for all such liabilities or deficiencies resulting therefrom. To that end, the Party Responsible shall be liable to, and in addition shall indemnify and hold harmless the other Party from and against any and all claims, demands, actions, and causes of action which shall

2

or may arise by virtue of anything done or omitted to be done by the Party
Responsible outside of the scope of or in material breach of the terms of this
Agreement.

Doc. No. 3-1 at 4, 7.

Hub held a commercial general liability insurance policy issued by Executive Risk for the
period August 1, 2019, to August 1, 2020 (the "CGL Policy"). Doc. No. 31 ¶ 12; Doc. No. 3-6 at
4. The coverage section of the CGL Policy states that the insurer "will pay damages that the
insured becomes legally obligated to pay for 'bodily injury' . . . to which this insurance applies"
and "have the right and duty to defend the insured against any 'suit' seeking those damages."
Doc. No. 3-6 at 13.

In the section "WHO IS AN INSURED," the CGL Policy states: "No person or
organization is an insured with respect to the conduct of any current or past partnership, joint
venture or limited liability company that is not shown as a Named Insured in the Declarations."
Id. at 22. The parties refer to this provision as the "Joint Venture Limitation." The Policy also
contains multiple exclusions from coverage, one of which excludes coverage for "'[b]odily
injury' or 'property damage' for which the insured is obligated to pay damages by reason of the
assumption of liability in a contract or agreement." Id. at 14. However, this exclusion does not
apply to liability for damages "[t]hat the insured would have in the absence of the contract or
agreement" or "[a]ssumed in a contract or agreement that is an 'insured contract', provided the
'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or
agreement." Id.

Of additional relevance in this case are two Endorsements to the Policy which state that a
person or organization is an additional insured "WHERE REQUIRED BY WRITTEN
CONTRACT." Id. at 31, 33. The first of these Endorsements adds that group of additional

3

insureds "only with respect to liability for 'bodily injury' . . . caused, in whole or in part, . . . in the performance of your ongoing operations for the additional insured(s)." Id. at 31. The second Endorsement adds that group of additional insureds "only with respect to liability arising out of your ongoing operations performed for that insured." Id. at 33.

On July 28, 2020, during the one-year policy period of the CGL Policy, Joseph Morog, an employee of Hub, was allegedly injured while working on the MBTA Project and assisting in the use of an auger and Kelley Bar extension. Doc. No. 31 ¶ 8. Morog subsequently filed a state court lawsuit against GLX and other entities involved in the MBTA Project (though not directly against HBI or Hub). See id. ¶ 9. Morog's complaint in that action alleges that Morog was an employee of Hub, a subcontractor for GLX hired to perform drilling and foundation work on the MBTA extension project (which he refers to as the "GLX Project"). Doc. No. 3-3 ¶ 10. Three and a half weeks into his employment for Hub, "Morog was working within the scope of his employment [for Hub] on the GLX Project at the GLX Worksite when he was injured while assisting in the use of a Kelly Bar extension and a 48" auger, causing [Morog] to suffer injuries including the traumatic partial amputation of two of his fingers." Id. ¶ 11. The complaint asserts a single count of negligence, stating: "The GLXC Defendants, and/or their agents, servant [sic], and/or employees, negligently, carelessly, and in violation of recognized construction industry standards, policies, and procedures breached their duties of care and safety because they allowed dangerous conditions to exist on the worksite . . . ." Id. ¶ 14. It further asserts that Morog's "serious and permanent injuries" were the "direct and proximate result of the negligence of" the defendants named in that action. Id. ¶ 15.

GLX subsequently filed a third-party complaint against HBI seeking indemnification for any damages for which GLX might be held ultimately responsible. Doc. No. 3-4. Specifically,

GLX's third-party complaint asserts that GLX retained HBI to conduct work on the MBTA Project, id. ¶ 3, and that under the terms of the HBI Subcontract, HBI "agreed to indemnify and hold harmless GLXC and its members from and against third party claims resulting from the alleged negligent act or omission of its employees, agents or subcontractors," id. ¶ 4. That complaint references Morog's original complaint and describes Morog's allegation that "he was working on the Green Line Extension [MBTA] Project when he sustained a traumatic partial amputation of two fingers on his left hand while cleaning the connection hole on a 48-inch drill rig auger." Id. ¶ 6. GLX's third-party complaint further explains:

> 7. At the time of the incident, the plaintiff was employed by Hub Foundation, Inc., Co., a subtractor of [HBI].
>
> 8. If the plaintiff, Joseph Morog, was injured as alleged in the plaintiff's Complaint, such damages were caused by the negligence or willful misconduct of [HBI], its employees and/or its subcontractors, including but not limited to Hub Foundation, Inc., Co. and/or their employees.
>
> 9. By letter dated June 4, 2021, GLXC tendered its defense to [HBI] pursuant to the terms and conditions of the contract.
>
> 10. [HBI] has failed to accept the tender of defense and defend and indemnify GLXC and its members.

Id. ¶¶ 7–10. GLX's third-party complaint then asserts four counts against HBI: breach of contract, indemnification, contribution, and declaratory judgment about the terms of the HBI Subcontract and HBI's duty to defend and indemnify GLX. Id. ¶¶ 11–30.

Following the filing of GLX's third-party complaint, HBI in turn filed a motion for leave to file a third-party complaint against Hub (with the proposed third-party complaint attached to the motion).[2] Doc. No. 31 ¶ 11; Doc. No. 3-5 at 2–16. HBI's proposed third-party complaint

---

[2] The state court docket, of which the Court takes judicial notice, indicates that the state court allowed that motion after the filing of the motions pending before this Court. In any event,

alleges that under the terms of the Joint Venture Agreement, "HUB agreed to indemnify, hold harmless, and be liable to [HBI] (i) for any losses caused by HUB's sole fault, recklessness and/or willfully negligent act; and (ii) 'from and against any and all claims, demands, actions, and causes of action which shall or may arise by virtue of anything done or omitted to be done by [HUB] outside of the scope of or in material breach of the terms of this Agreement.'" Doc. No. 3-5 ¶ 6. HBI's complaint notes the allegation in Morog's original complaint that he was working on the MBTA Project when he sustained the injury at issue, id. ¶ 12, and then HBI's complaint alleges the following with regard to Hub's role in Morog's alleged injury:

14. At the time of the incident, Plaintiff [Morog] was employed by HUB.

15. At the time of the incident, Plaintiff was working under the sole direction and supervision of HUB.

16. At the time of the incident, Plaintiff was working with, and was injured by, equipment owned by HUB.

17. If Plaintiff was injured as alleged in his Complaint, such damages were caused by the negligence or willful misconduct of HUB, its employees and/or its subcontractors.

18. Any liability imposed on [HBI], including but not limited to liability to GLX for indemnity and/or contribution, would not result from [HBI's] wrongdoing, but would be as a result of the conduct of HUB, its employees and/or its subcontractors.

19. If Plaintiff was injured as alleged in his Complaint, HUB is required to indemnify HBI and GLX.

Id. ¶¶ 14–19.

HBI then asserts four counts against Hub: breach of contract, indemnification, contribution, and declaratory judgment about the terms of the Joint Venture Agreement and

---

neither party suggests the prior pending nature of that motion affects in any way resolution of the two dispositive motions pending before this Court.

Hub's duty to defend and indemnify HBI and GLX with regard to the matters alleged in Morog's complaint and GLX's third-party complaint. Id. ¶¶ 22–42.

Hub subsequently demanded a defense for itself by Executive Risk under its CGL Policy, and Hub supported the demand for a defense by HBI and GLX as alleged "additional insureds" on the CGL Policy. Doc. No. 31 ¶¶ 16–17. Executive Risk denied any obligation to defend or indemnify Hub, HBI, or GLX in the underlying state court action. Id. ¶ 19. First, it asserted (and continues to argue in the present Motion) that Hub is not an "insured" with respect to the state court action because that action arises out of Hub's conduct of a joint venture (with HBI and Case), and the "Joint Venture Limitation" provision in the CGL Policy states that "[n]o person or organization is an insured with respect to the conduct of any current or past . . . joint venture . . . that is not shown as a Named Insured . . . ." See id.; Doc. No. 3-12 at 3; Doc. No. 17 at 1–2; Doc. No. 3-6 at 22. Second, Executive Risk asserted (and continues to argue) that HBI, Case, and GLX are not "additional insureds" under the CGL Policy, or even if they are additional insureds, coverage for them is also barred by the Joint Venture Limitation. Doc. No. 31 ¶ 20. Hub disputes these conclusions. See id. ¶ 21; Doc. No. 29. It filed the present lawsuit against Executive Risk (originally in Massachusetts state court before Executive Risk removed to federal court) asserting a breach of contract claim for Executive Risk's refusal of Hub's demand for defense and indemnification of HBI and GLX under the CGL Policy, and a second claim seeking a declaratory judgment that the CGL Policy requires Executive Risk to defend and indemnify HBI and GLX in connection with the underlying state court case as well as any other suits against Hub, HBI, and/or GLX in connection with the MBTA Project. Doc. No. 1-1.[3]

---

[3] Executive Risk was improperly named in the Complaint as The Chubb Corporation. The error has since been corrected on the docket, see Doc. Nos. 34, 35, and Hub has informed the Court that if the Court denies Executive Risk's Motion for Judgment on the Pleadings, Hub intends to

II.    LEGAL STANDARDS

"A motion for judgment on the pleadings bears a strong family resemblance to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and these two types of motions are treated in much the same way." Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018). The difference between the two is that a "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54– 55 (1st Cir. 2006). A court presented with a request for judgment under Rule 12(c) must confine its review to the pleadings and certain limited categories of documents, including those referenced or incorporated in the pleadings. See Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007). Dismissal under Rule 12(c) "is only appropriate if the pleadings, viewed in the light most favorable to the non-moving party, fail to support a plausible entitlement to relief." N. Sec. Ins. Co. v. Travelers Ins. Co. of Am., 531 F. Supp. 3d 467, 470 (D. Mass. 2021) (internal quotation marks and citations omitted).

Summary judgment under Rule 56 is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party "has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Rsch. Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The Court is "obliged to []view the record in the

---

seek permission to file an amended complaint that will, among other things, correct errors such as Executive Risk's name and the policy period of the applicable policy, see Doc. No. 29 at 1 n.1.

light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).

The interpretation of an insurance contract is a question of law to be decided by a court, not a jury. Dorchester Mut. Ins. Co. v. Krusell, 150 N.E.3d 731, 738 (Mass. 2020); Boazova v. Safety Ins. Co., 968 N.E.2d 385, 390 (Mass. 2012). Under Massachusetts law, courts construe an insurance policy according to the general rules of contract interpretation, including that the language of policies must generally be assigned their "plain and ordinary meaning." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000). When there is doubt about the proper meaning of a term, courts "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Krusell, 150 N.E.3d at 738 (internal quotation marks and citations omitted). Ambiguities in the language of an insurance policy are interpreted in favor of the insured and against the insurer who wrote the policy, and this principle applies with particular force to exclusionary provisions. Dorchester Mut. Ins. Co. v. Miville, 204 N.E.3d 382, 386 (Mass. 2023). A policy term is ambiguous where "it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Krusell, 150 N.E.3d at 738 (internal quotation marks and citation omitted). "While '[a]n insured bears the initial burden of proving that the claimed loss falls within the coverage of the insurance policy,' once that burden has been met, 'the burden then shifts to the insurer to show that a separate exclusion to coverage is applicable to the particular circumstances of the case.'" Miville, 204 N.E.3d at 386–87 (alteration in original) (quoting Boazova, 968 N.E.2d at 390).

Under Massachusetts law, an insurer has a duty to defend "when the allegations of the complaint are 'reasonably susceptible' of an interpretation that 'roughly sketches a claim covered

by the policy terms.'" Phoenix Ins. Co. v. Ragnar Benson Constr. LLC, 404 F. Supp. 3d 427, 440 (D. Mass. 2019) (quoting Billings v. Commerce Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010)). In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage." Id. Furthermore, in contrast to the duty to indemnify, which "arises only after an insured's liability has been established" in an underlying action, the "duty to defend arises in situations involving threatened or actual litigation by a third party, a context in which time is of the essence, and in which cost and complexity can compound each passing day." Wilkinson v. Citation Ins. Co., 856 N.E.2d 829, 836 (Mass. 2006); see also Ricchio v. Bijal, Inc., 424 F. Supp. 3d 182, 188 (D. Mass. 2019).

III.   DISCUSSION

   A.   "Joint Venture Limitation" and Duty to Defend Hub

Before analyzing the language in the Joint Venture Limitation provision, the Court begins with the question of which party bears the burden of proof on the issue of whether the underlying case falls within the Joint Venture Limitation provision. The Massachusetts Supreme Judicial Court has explained:

> [D]etermining which party bears the burden of proving an exclusion is dependent on the location of the exclusion in the insurance policy: where the exclusion is in the same paragraph as the coverage clause, the exclusion is considered part of the coverage clause for purposes of burden of proof, but where the exclusion is in a separate and distinct part of the insurance policy, the exclusion is treated separately from the coverage clause and the burden shifts to the insurer.

Highlands Ins. Co. v. Aerovox Inc., 676 N.E.2d 801, 805 n.8 (Mass. 1997) (first citing Murray v. Cont'l Ins. Co., 48 N.E.2d 145, 147 (Mass. 1943); and then citing Brown Daltas & Assocs. v. Gen. Accident Ins. Co., 48 F.3d 30, 37 (1st Cir.), cert. denied sub nom. Brown Daltas & Assocs.

v. Northbrook Excess Surplus Ins. Co., 516 U.S. 822 (1995)); see also Highlands Ins. Co., 676 N.E.2d at 804; Creamer v. Arbella Ins. Grp., 120 N.E.3d 1239, 1245 (Mass. App. Ct. 2019).

Here, the "Insuring Agreement" provision of the policy under the heading "SECTION I – COVERAGES" provides: "We will pay damages that the insured becomes legally obligated to pay for 'bodily injury' or 'property damage' to which this insurance applies." Doc. No. 3-6 at 13 (emphasis added). Also, under "SECTION I – COVERAGES" but following the "Insuring Agreement" provision is a second provision entitled "Exclusions," which contains a long list of types or sources of bodily injury or property damage excluded from coverage. Id. at 13–17. The policy specifies that "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured," id. at 13, and the Joint Venture Limitation provision appears near the end of Section II. Id. at 21–22 ("No person or organization is an insured with respect to the conduct of any current or past . . . joint venture . . . .").

The Court holds that under the structure of this policy and the SJC's approach to determining which party bears the burden, the Joint Venture Limitation "is considered part of the coverage clause for purposes of burden of proof." Highlands Ins. Co., 676 N.E.2d at 805 n.8. This Limitation is within the "Who Is An Insured" section, which defines who is qualified as an "insured" under the policy, rather than in any of the separate and clearly distinct sections in the policy titled "exclusions." Because the Joint Venture Limitation is not an exclusion "in a separate and distinct part of the insurance policy," it is not an exclusion about which the burden of proof shifts to the insurer. Id. Rather, the insured party, Hub, bears the burden to show that the underlying action is outside the Joint Venture Limitation as part of its initial burden of establishing coverage.

11

The Court next turns to the language of the Joint Venture Limitation provision and the question of whether Executive Risk has a duty to defend Hub in the underlying litigation, considering these questions under Hub's Cross-Motion for Partial Summary Judgment first. Even on Hub's own Cross-Motion, where the legal standard favors Executive Risk as the non-movant, Hub has shown that "the allegations of the [underlying] complaint are 'reasonably susceptible' of an interpretation that 'roughly sketches a claim covered by the policy terms'"—the showing required to trigger Executive Risk's duty to defend Hub in the underlying litigation. Phoenix Ins. Co., 404 F. Supp. 3d at 440.

The underlying complaints point to the negligence of Hub, individually, as the alleged cause of Morog's injury. See Clarendon Am. Ins. Co. v. B.G.K. Sec. Servs., Inc., 900 N.E.2d 385, 392 (Ill. App. 2008) ("Looking at the underlying complaints and Clarendon's policy, it is clear that a potential for coverage exists. Clarendon's 'Named Insured,' BGK, was sued directly in the underlying lawsuits for its own alleged negligence during the fire."). HBI's third-party complaint against Hub alleges that at the time of his injuries, Morog "was working under the sole direction and supervision of HUB," "was working with, and was injured by, equipment owned by HUB," "if [Morog] was injured as alleged in his Complaint, such damages were caused by the negligence or willful misconduct of HUB, its employees and/or its subcontractors," and "[a]ny liability imposed on [HBI], including but not limited to liability to GLX for indemnity and/or contribution, would result not from [HBI's] wrongdoing, but would be as a result of the conduct of HUB, its employees and/or its subcontractors." Doc. No. 3-5 ¶¶ 15–18. In short, the only direct claims against Hub arise from allegations that Hub's own conduct gives rise to liability.

The third-party complaint by GLX against HBI alleges that "[a]t the time of the incident, the plaintiff was employed by Hub Foundation, Inc., Co., a subtractor of [HBI]," and "[i]f the

12

plaintiff, Joseph Morog, was injured as alleged in the plaintiff's Complaint, such damages were caused by the negligence or willful misconduct of [HBI], its employees and/or its subcontractors, including but not limited to Hub Foundation, Inc., Co. and/or their employees." Doc. No. 3-4 ¶¶ 7–8. And the original complaint in the underlying action, filed by Morog against GLX, asserts a single count of negligence, stating, "The GLXC Defendants, and/or their agents, servant [sic], and/or employees, negligently, carelessly, and in violation of recognized construction industry standards, policies, and procedures breached their duties of care and safety because they allowed dangerous conditions to exist on the worksite . . . ." Doc. No. 3-3 ¶ 14.

For several reasons, Hub has shown that "the allegations of the [underlying] complaint are 'reasonably susceptible' of an interpretation that 'roughly sketches a claim covered by the policy terms,'" Phoenix Ins. Co., 404 F. Supp. 3d at 440, despite the existence of the Joint Venture Limitation. First, reading the complaint against the policy language alone, this complaint is reasonably susceptible to the assertion that Hub's negligence during its own operations, not necessarily connected in any way to the Joint Venture, caused Morog's injuries in whole or part.  Moreover, it is the third-party complaint against Hub for which Hub now seeks a defense.

Second, even broadening the factual lens to conclude that Morog's injuries arose in the course of work performed for Hub on the site of the MBTA Project, work which was in furtherance of the Joint Venture, still gives rise to Executive Risk's duty to defend Hub under the insurance contract.  The Court holds that the "conduct of" the Joint Venture language is comfortably read to reach only jointly undertaken activities, but not all activities of the insured which are in furtherance of the goals of the Joint Venture as Executive Risk contends. At best for Executive Risk, "reasonably intelligent persons would differ as to which [of these two]

13

meaning[s] is the proper one." Krusell, 150 N.E.3d at 738. Therefore, the "conduct of any . . .
joint venture" language is ambiguous. See id.; see also Clarendon Am. Ins. Co., 900 N.E.2d at
394–96 (finding joint venture limitation language nearly identical to that at issue here
ambiguous). "Any ambiguities in the language of an insurance contract are interpreted against
the insurer who used them and in favor of the insured." Miville, 204 N.E.3d at 386 (internal
quotation marks omitted).

      An example illustrates this point. A foundation company, as subcontractor, pours the
concrete foundation in a hole dug by a hole company. Bodily injury arises from the foundation
company's pouring of the foundation (not related to any particulars of the digging of the hole);
Executive Risk's policy provides coverage. Neither the foundation company nor any reasonable
insured in its shoes would read the Joint Venture Limitation as eliminating coverage for this
bodily injury if the hole company and foundation company formed a joint venture to perform the
same work, but during which the foundation company did its own work. Of course, the reason
for this understanding is obvious and tied to the purpose of the limitation. The risks as to injury
while digging the hole are the same in either case. The Joint Venture Limitation serves to limit
the obvious risks of jointly undertaken activity not priced by the policy for a single insured.

      The various non-binding decisions cited by Executive Risk in support of its interpretation
of the Joint Venture Limitation are distinguishable and do not counsel a different result under the
circumstances of this case. Many involve injuries that were far more clearly from "the conduct
of" a joint venture than the injury in the present case. For instance, several of these decisions
concern injuries resulting from a finished product of a joint venture. See Citizens Ins. Co. of Am.
v. Panzica Bldg. Corp., 507 F. Supp. 3d 1047 (N.D. Ind. 2020); Associated Metals & Minerals
Corp. v. Hartford Accident & Indem. Co., No. 76 Civ. 38077-CSH, 1977 U.S. Dist. LEXIS

16808 (S.D.N.Y. Mar. 21, 1977); <u>Austin P. Keller Constr. Co. v. Com. Union Ins. Co.</u>, 379 N.W.2d 533, 534 (Minn. 1986). Such an injury is more clearly a result of the conduct of (and risks posed by) a joint venture, involving the efforts of all joint-venture members to create the finished product, something very different from the present asserted claims. Other non-binding decisions cited involve the duty to indemnify arising after trial, <u>Bott v. J.F. Shea Co.</u>, 299 F.3d 508 (5th Cir. 2002), or liability plainly arising from the failings of the joint venture itself, <u>Reno Contracting, Inc. v. Crum & Forster Specialty Ins. Co.</u>, 359 F. Supp. 3d 944, 951 (S.D. Cal. 2019).

Finally, many of the cases cited by Executive Risk also involve joint-venture-related policy language that is more broadly worded than the language at issue in this case. The policies in those cases excluded injury or property damage "arising out of the conduct of any . . . joint venture." <u>Austin P. Keller</u>, 379 N.W.2d at 534; <u>Fireman's Fund Ins. Co. v. E. W. Burman, Inc.</u>, 391 A.2d 99, 102 (R.I. 1978); <u>Associated Metals</u>, 1977 U.S. Dist. LEXIS 16808, at *3. The CGL Policy's exclusion lacks the "arising out of" language and is phrased more narrowly, limited to injury or damage from "the conduct of" any joint venture.

"In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage." <u>Phoenix Ins. Co.</u>, 404 F. Supp. 3d at 440. The complaints underlying this action do show this possibility. Nothing further is required at this point. Hub's Cross-Motion for Partial Summary Judgment is ALLOWED as to Executive Risk's duty to defend Hub in the underlying action. Conversely, for the same reasons explained above, Executive Risk's Motion for

Judgment on the Pleadings (where the legal standard is less favorable to Executive Risk) is

DENIED as to the duty to defend.[4]

      B.    <u>Additional Insureds</u>

      Both parties' motions next seek a ruling on whether GLX and HBI are "additional

insureds" under Hub's CGL Policy.[5] The Court again considers Hub's Cross-Motion for Partial

Summary Judgment first. In a separate endorsement, the CGL Policy provides:

> Section II – Who is An Insured is amended to include as an additional insured the
> person(s) or organization(s) shown in the Schedule, but only with respect to liability
> for 'bodily injury' . . . caused, in whole or in part, by:
> > 1. [Hub's] acts or omissions; or
> > 2. The acts or omissions of those acting on [Hub's] behalf;
> in the performance of [Hub's] ongoing operations for the additional insured(s) . . . .

Doc. No. 3-6 at 31. Instead of naming specific persons or organizations as additional insureds,

the Schedule simply states," "WHERE REQUIRED BY WRITTEN CONTRACT." <u>Id.</u> Hub

makes separate arguments for why HBI and GLX are each additional insureds under written

contracts requiring their coverage. Doc. No. 29 at 14.

      As to GLX, two different contracts, when considered together, require Hub to name GLX

as an additional insured. <u>See</u> Doc. No. 29 at 14. First, section 29.1.2 of the HBI Subcontract—the

---

[4] The Court does not reach the issue of whether Executive Risk has a duty to indemnify Hub or
any other party in the underlying action. Under Massachusetts law, "a declaratory judgment is
not yet ripe for consideration regarding the duty to indemnify where, as here, the underlying
action has not determined liability or adjudicated factual disputes." <u>Bacon Constr. Co. v. Ohio
Sec. Ins. Co.</u>, No. 1:20-CV-280-MSM-LDA, 2022 WL 670868, at *7 (D.R.I. Mar. 7, 2022)
(internal quotation marks omitted) (quoting <u>Narragansett Bay Ins. Co. v. Kaplan</u>, 146 F. Supp. 3d
364, 372 (D. Mass. 2015)); <u>see also, e.g.</u>, <u>Capitol Specialty Ins. Corp. v. Dello Russo Enters.,
LLC</u>, No. CV 21-10939-FDS, 2023 WL 374330, at *9 (D. Mass. Jan. 24, 2023).

[5] Executive Risk's Motion also argues that Case, the third party to the Joint Venture Agreement,
is not an additional insured. <u>See</u> Doc. No. 17 at 14. Hub's combined opposition to Executive
Risk's Motion and Cross-Motion for Partial Summary Judgment neither responds to Executive
Risk's arguments about Case under the additional insured issue, nor argues specifically that Case
is an additional insured on its own Cross-Motion. <u>See</u> Doc. No. 29 at 13–16. Case is not a party
named in the underlying litigation. <u>See</u> Doc. Nos. 3-3, 3-4, 3-5.

contract between GLX and HBI but not Hub concerning work on the MBTA Project—requires HBI to purchase commercial general liability insurance that names GLX as an additional insured. See Doc. No. 3-2 at 136; Doc. No. 29 at 14.  Second, section 1.2 of the Joint Venture Agreement between Hub, HBI, and Case (but not GLX), states, "HBI shall be the party under whose name the Project Contract [i.e., the HBI Subcontract] is executed. The obligations and liabilities of the Parties [to the Joint Venture Agreement (HBI, Hub, and Case)] under the Project Contract shall be joint and several. Such Project Contract shall be carried out and performed by them . . . ." Doc. No. 3-1 at 4. This provision of the Joint Venture Agreement requires Hub (and the other joint venturers) to fulfill the obligations of the HBI Subcontract.  Thus, this written contract renders GLX an additional insured under Hub's policy making others additional insured when "REQUIRED BY WRITTEN CONTRACT". See Doc. No. 29 at 14. This language evidences a clear intent to designate GLX as an additional insured under the Hub policy. See Westfield Ins. Co. v. Walsh/K-Five JV, No. 1-21-0802, 2022 WL 3445797, at *7-10 (Ill. App. Ct. Aug. 17, 2022); cf. Scottsdale Ins. Co. v. United Rentals N.A., Inc., 152 F. Supp. 3d 15, 21-22 (D. Mass. 2015) (finding that although contract used clumsy language, reading the contract as a whole had the "clear effect" of creating an additional-insured-status requirement). GLX is an additional insured on Hub's CGL Policy.

As to HBI, Hub cites the following language in the "INSURANCE" section of the Joint Venture Agreement between HBI, Hub, and Case:

> The Parties shall carry adequate public liability, property damage and worker's Compensation insurance, as well as any other insurance that may be required or considered advisable from time to time in the option of the Management Committee so as to protect the Parties hereto adequately and hold them harmless form [sic] any accident or claim which may arise in the course of the performance of the Project Contract and for a period of one year following its completion.

17

Doc. No. 3-1 at 12 (emphasis added). Hub argues that even though it does not specifically state the words "additional insured," this written contract language in the Joint Venture Agreement requires Hub to cover HBI as an additional insured. The Court agrees. Although this language does not "state[] explicitly that [HBI] was to be an additional insured" on Hub's policy, that is the language's "clear effect." Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc., 152 F. Supp. 3d 15, 21 (D. Mass. 2015); see also United Rentals (N. Am.), Inc. v. Conti Enterprises, Inc., 293 F. Supp. 3d 447, 456 (S.D.N.Y. 2018). Just as the Court has found other language in the Joint Venture Agreement reflected the parties' "clear intent" to designate GLX an additional insured, this provision likewise evidences the partners' intent (and their plainly reasonable expectation) that each would include the others as additional insureds as well. Accordingly, HBI is an additional insured under the endorsement as "required by written contract." Doc. No. 3-6 at 31.[6]

Two more points bear mention. First, the Court rejects Executive Risk's argument related to the "your ongoing operations" language (with "your" referring to the named insured, Hub) in the additional insured endorsement: its argument that Hub is not a named insured under the CGL Policy for the conduct of the underlying action in this case due to the Joint Venture Limitation, and that consequently, HBI cannot be an additional insured because the underlying action does not arise out of the operations of the named insured (Hub). See Doc. No. 17 at 17; Doc. No. 30 at 18–19. For the reasons previously explained, the Joint Venture Limitation does not, at least at this stage, take the claims outside of the CGL Policy coverage, thus HBI could be covered "with respect to liability for 'bodily injury' . . . caused in whole or in part by" Hub's "acts or omissions

---

[6] For the same reasons, Case is also an additional insured as "required by written contract" under the above-described endorsement. Executive Risk's Motion is DENIED with regard to its argument that Case cannot be an additional insured under the policy.

. . . in the performance of [Hub's] ongoing operations for the additional insured(s)." Doc. No. 3-6 at 31.

Second, for similar reasons the Court rejects Executive Risk's argument that because the claims against HBI in the underlying action arise out of HBI's conduct of a joint venture, HBI cannot be an additional insured under Hub's CGL Policy. As previously stated, the CGL Policy covers Hub's liability, if any, even if Hub's activities were in furtherance of the joint venture as long as its activities were not the conduct of the joint venture. Additional insured coverage under Hub's CGL Policy does not expand that policy's coverage to separate negligence of HBI—it only covers HBI with respect to liability for certain harms caused in whole or in part by Hub's acts or omissions. See Doc. No. 3-6 at 31. As explained by the Bacon Construction Co. court:

> The purpose of the joint venture exclusionary clause . . . seems to be, as applied in this case, to ensure that [the named insured], by working with other entities, does not open the insurer up to broad coverage for any entity [the named insured] happens to be working with. Therefore, the policy limits coverage for other companies to those who are either themselves 'named insureds' in the Declaration or who are additional insureds for a specific project carried out with [the named insured], only concerning the work done by . . . the 'named insured,' and only with respect to acts or conduct of [the named insured].

Bacon Constr. Co., 2022 WL 670868, at *6 (applying Massachusetts law). Reading the policy "in a reasonable and practical way, consistent with its language, background, and purpose," id. at *5 (internal quotation marks omitted) (quoting Mass. Prop. Ins. Underwriting Ass'n v. Wynn, 806 N.E.2d 447, 450 (Mass. 2004)), the Joint Venture Limitation does not exclude HBI as an additional insured from being covered for liability it incurs as a result of Hub's negligence that is outside of the "conduct of" the joint venture. Cf. Bacon Constr. Co., 2022 WL 670868, at *5–6.

For these reasons, Hub's Cross-Motion is ALLOWED as to HBI's additional insured status. Conversely, Executive Risk's Motion is DENIED.

IV.    <u>CONCLUSION</u>

Accordingly, Hub's Cross-Motion for Partial Summary Judgment (Doc. No. 28) is ALLOWED as described above as to Executive Risk's duty to defend Hub in the underlying action and HBI's and GLX's status as additional insureds. Executive Risk's Motion for Judgment on the Pleadings (Doc. No. 16) is DENIED. The duty to indemnify issue remains unresolved given the Court's rulings.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge